ONOFRIO ESPOSITO, Plaintiff, *v.* ST. GEORGE SWIMMING CLUB, INC., and Another, Defendants.

Municipal Court of New York, Borough of Brooklyn, First District, March, 1932.

*Charles P. Gravina*, for the plaintiff.

*James B. Henney*, for the defendant.

Lewis, David C., J. The defendant conducts a public indoor swimming pool, equipped with a high diving platform and spring board at an elevation of ten feet.

On April 4, 1930, the plaintiff purchased admission, and, after entering the pool, sought to avail himself of this apparatus. He mounted the high diving platform and dove off the board into the pool. Before he could entirely emerge from beneath the water's surface, another patron, without warning, dove from the same board.

The plunging body of the second diver struck the plaintiff on the head and injured him.

The plaintiff attributes this accident to the defendant's negligence in failing to take precautions to avert such occurrences.

While the defendant engages life guards, no proof is presented either establishing the issuance of any instructions or orders controlling the use of this high diving apparatus, or indicating that any guard is charged with the task of supervising its use.

From the evidence submitted it appears that the defendant has not adopted any measures to prohibit or restrain one man leaving the high diving board before the man ahead of him has had a reasonable opportunity to rise to the surface.

The plaintiff's right to a recovery is challenged on two grounds:

(1) The defendant was not chargeable with actionable negligence.

(2) The plaintiff was chargeable with contributory negligence, or had accepted the risk.

To render the defendant accountable to this plaintiff for negligence it is essential to establish a duty owing by the defendant to the plaintiff; the defendant's violation of such a duty; and damages sustained by this plaintiff as a natural consequence of such a breach.

Whether or not it is the duty of the proprietor to take precautions to avoid accidents of this type is to be determined, not by any arbitrary opinion of this court, but by the norm of average care. To answer this question it is not necessary to decide what precise precaution should have been taken; but whether some precaution should have been taken. For in the case at bar apparently none was taken.

In passing on this question of the proprietor's duty it is to be

noted that the indoor public swimming pool, as a place of public amusement open to all for the price of admission, is of comparatively recent vogue.

In the past we have had the Turkish bath plunge, the gymnasium or club tank, and the private pool. These are old accommodations, available, if not appurtenant, to life in a great metropolis. But the indoor public swimming pool is of this generation.

A new public pastime produces its own relationship between the patron and proprietor. And out of this relationship, and according to the nature of the undertaking, there arises appropriate incidental legal duties and responsibilities on the part of the proprietor to protect the patron against avertable mishap and casualty.

When one looks at the field of organized sports he finds that it is the practice to seek, by suitable rules, to protect the players against unnecessary dangers. On the golf links, in the fistic arena, or on the gridiron, there are the rules of the game calculated to avert such perils.

The patron of a public swimming pool has no responsibility for its management. He cannot supervise admission, select his copatrons, nor control the establishment. In these matters, except as restricted by law, the proprietor possesses absolute authority. By undertaking the enterprise he assumes these responsibilities. For the performance of these duties, the patron naturally, if not necessarily, looks to the proprietor.

Where one patron may rapidly follow another in diving from the elevated platform, so that the former may not have a chance to come up to the surface before the latter comes down, would not common prudence suggest the adoption of some precautionary or supervisory measures by the proprietor to avert injury to the former through the carelessness of the latter?

Of what avail may it be for one to look before he leaps, when it is some independent act of another, after he leaps, that spells his disaster?

And then may one not venture to mould his concept of what would be reasonable in the amusement world by rules of conduct sanctioned in the business world?

In the mercantile world the buyer of goods in a given case may rely upon the superior experience, knowledge and opportunities of the seller.

What real reason is there to deny to the patron in the amusement world the right to rely upon the superior knowledge, experience and opportunities of the proprietor?

In the first instance one purchases goods; in the other, he pays

for pastime. In one instance a default is classed as a breach of contract; in the other it becomes a breach of duty. These appear to be distinctions of the law; each case presenting a principle of reliance and responsibility.

This line of thought is in keeping with the apparent trend of the law. At least, it is not inconsistent with the rules and their reasons as found in the decisions.

Concluding that responsibility to take reasonable precaution to avert this accident originally rested on the defendant proprietor, to what extent or on what theory is he to be relieved?

The defendant pleads the doctrine of assumed risk.

If as a matter of judicial notice the court consider the old words of warning, " Dive at your own risk," and deem them applicable to the plaintiff's conduct, will this save the defendant from liability?

I do not believe the defendant can take refuge behind this familiar caution. This phrase I construe as placing responsibility on a person for his own acts; not as visiting upon him an obligation properly resting upon the proprietor, nor making any and all negligence of another his assumed or accepted risk.

Many of us are at times victims of a false belief (into which vanity lures us) in our own skill and ability; and there are others who frequently substituting daring for discretion, plunge into waters where mermaids would not dare to dive. In any such instance, the warning finds its application. And then when mishap follows adventure, the consequences can be traced directly to the shortcomings of the victim and we can lay the fault at the feet of the sufferer.

Technical distinctions between the doctrine of acceptance or assumption of risk (as applied to relationships other than master and servant) and the law of contributory negligence may exist, but are no longer the source of dilemma or difficulty.

" Here is a borderland case where the concept of contributory negligence merges almost imperceptibly into that of acceptance of a risk (Bohlen, [Torts] 500; Warren, *Volenti non fit injuria*, 8 Harv. L. R. 457, 459, 461). Very often the difference is chiefly one of terminology. In strictness, however, to make out acceptance of the risk there must be foresight of the consequences (*Smith* v. *Baker*, 1891, A. C. 325, 337, 355; *Larson* v. *Nassau El. R. R. Co.*, 223 N. Y. 14; Warren, *supra*)." (*McFarlane* v. *City of Niagara Falls*, 247 N. Y. 340, at p. 349.) " Whether the phrase can be applied with technical precision, in view of the associations it has gathered, to relations not contractual, there is no occasion to determine. If it be so extended for convenience, it stands for nothing more in its application thus enlarged than is expressed in the maxim,

*volenti non fit injuria* (*McFarlane* v. *City of Niagara Falls*, 247 N. Y. 340, 349). The principle compact within the maxim ' does not result from an implied term in a contract creating the relation; it applies equally to a relation voluntarily assumed — contractual or not.' " (*Zurich G. A. & L. Ins. Co.* v. *Childs Co.*, 253 N. Y. 324, 327.) (See United States Law Review for January, 1932; Editorial, N. Y. L. J. Feb. 23, 1932.)

The management had equipped its pool with this diving apparatus for the use of it patrons. There it stood, not simply as a silent temptation to the daring seeking a thrill, but as an invitation to the expert to try their skill.

In the case before me the thrill of being struck was not the appealing motive. (*Tantillo* v. *Goldstein Bros. Amusement Co.*, 248 N. Y. 290.) Nor could it be considered part of the sport. (*Reinzi* v. *Tilyou*, 252 N. Y. 97, at p. 101.) Nor was it a hazard invited and foreseen. (*Lumsden* v. *Thompson S. R. Co.*, 130 App. Div. 209, at pp. 212, 213.)

These principles find eloquent expression in the language of our highest court: " One who takes part in such a sport accepts the dangers that inhere in it so far as they are obvious and necessary, just as a fencer accepts the risk of a thrust by his antagonist or spectator at a ball game the chance of contact with the ball." (*Murphy* v. *Steeplechase Amusement Co.*, 250 N. Y. 479, at p. 482.)

And so to further borrow from the language of our highest court: " The dangerous quality of the act is visible enough now when we view it after the event. It was not so obvious in the doing as to betoken, at least as matter of law, a foresight of the consequences and a readiness to accept them." (*Zurich G. A. & L. Ins. Co.* v. *Childs*, 253 N. Y. 324, at p. 328.)

And when we come to deal with the duty and liability of the defendant to take precautions to avert such an accident we find ourselves on firmer ground.

The defendant maintained a public amusement; soliciting large attendances in the hope of profit. In such cases, the law tells us, " One who collects a large number of people must be vigilant to protect them." (*Arnold* v. *State of New York*, 163 App. Div. 253.)

" One entering a store, theatre, office building or hotel is entitled to expect that far greater preparations to secure his safety will be made than one entering a private building." (*Greene* v. *Sibley, etc., Co.*, 232 App. Div. 53, at p. 54.)

" A business visitor ' is entitled to expect that the occupier shall on his part use reasonable care to prevent damage from unusual danger which he knows or ought to know.' " (*Haefeli* v. *Woodrich Engineering Co.*, 255 N. Y. 442, 448.)

As to the defendant's duty, we need to inquire whether the proofs " disclose a situation which, in the exercise of ordinary and reasonable prudence, would have suggested the danger of this and similar accidents." (*Platt* v. *Erie County Agriculture Society*, 164 App. Div. 99, at p. 101.)

" The test of actionable negligence is not what might have prevented the particular accident, but what reasonably prudent and careful men would have done in the discharge of their duties under the circumstances as they existed at the time of the accident." (*Davenport* v. *Oceanic Amusement Co.*, 132 App. Div. 368, at p. 370.)

May one not conclude that common prudence should not have to wait on casualty to teach us necessary caution? Here experience would be too costly a tutor to rely exclusively upon her to learn principles of common care. If the inference could be drawn that by act or omission of the defendant the plaintiff was placed in a position of danger, or that greater care of defendant could have averted the accident, liability would follow. (*Maher* v. *Madison Sq. Garden*, 242 N. Y. 5C6.)

The mere fact that an accident of the kind has never before happened may not be enough to avert the charge of negligence. If it might reasonably have been anticipated, or if its occurrence would not, in the minds of reasonable men, be in the highest degree unlikely, if things were left in the condition then presented to them, the charge of negligence might be a proper one for the jury to pass upon. (*Dougan* v. *Transportation Co.*, 56 N. Y. 1; *Hubbard* v. *City of Yonkers*, 104 id. 434; *Cleveland* v. *N. J. S. Co.*, 125 id. 299, 306.)

" Here as so often ' it was not necessary that the defendant should have had notice of the particular method in which an accident would occur, if the possibility of an accident was clear to the ordinarily prudent eye.' " (*Zurich, etc.,* v. *Childs, supra,* at p. 329.)

But two elements are ordinarily necessary to sustain an action for negligence — a violation of duty owing by one to another or to the public, followed by such an injury as is the natural consequence of the negligent act, or which might reasonably have been anticipated to result therefrom. (*Childs* v. *White*, 158 App. Div. 1, at p. 3.)

For " negligence is gauged by the ability to anticipate." (*McGlone* v. *Angus*, 248 N. Y. 197, at p. 199.)

It is manifest that negligence is an elastic term not confined within precise precincts or to restricted relationships.

" The Court of Appeals in an early case (*Rosenplaenter* v. *Roessle*, 54 N. Y. 262) defined it, at page 268, as follows: ' To neglect means

to omit, as to neglect business, or payment, or duty, or work, and is generally used in this sense. It does not generally imply carelessness or imprudence, *but. simply an omission to do or perform some work, duty or act.' "* (Italics mine.) (*People* v. *Gaydica,* 122 Misc. 31, at p. 49.)

For the reasons stated I find the plaintiff entitled to a verdict in his favor against the defendant in the sum of

Ten days' stay after service of a copy of the judgment with notice of entry.