GEORGE JOHNSON, RESPONDENT, v. CHARLES ZEMEL, ABRAHAM ZEMEL, EDWARD ZEMEL AND JOSEPH ZEMEL, APPELLANTS.

Submitted January 30, 1932—Decided May 17, 1932.

Before GUMMERE, CHIEF JUSTICE, and Justices PARKER and CASE.

For the respondent, *James F. X. O'Brien.*

For the appellants, *Schneider & Schneider (Jacob Schneider* and *Andrew Van Blarcom,* of counsel).

The opinion of the court was delivered by

CASE, J. Plaintiff was injured on the evening of October 18th, 1926, as he was leaving a building known as the Laurel Gardens in the city of Newark where, on admission gained by ticket, he had been a spectator at a boxing exhibition. He brought suit against Vladimir Kussy, producer of the exhibition and part-time lessee of the premises, and also against the Zemels, owners of the building. The jury awarded a

verdict for the plaintiff against the owners, who now appeal. The verdict went against the plaintiff as to the defendant Kussy.

The appellants present that the court erred in refusing their motions for a nonsuit and for a direction of verdict in their favor.

A motion for nonsuit admits the truth of the plaintiff's evidence and of every inference of fact that can be legitimately drawn therefrom. *Weston Co.* v. *Benecke,* 82 *N. J. L.* 445. A refusal to nonsuit for failure of proofs will not justify a reversal if the defect be supplied by evidence thereafter taken during the progress of the cause. *Maudsley* v. *Richardson & Boynton Co.,* 101 *Id.* 561. Upon a request for a direction of verdict in favor of a defendant, the proof must be so clear that no other reasonable conclusion can be legitimately reached before such a peremptory instruction can be given. *Consolidated Traction Co.* v. *Reeves,* 58 *Id.* 573.

Reviewing the testimony to ascertain the aspect thereof that is most favorable to the plaintiff, we learn:

The Zemels came into the ownership of the premises on January 21st, 1925. Kussy was then sublessee under one Samel. On October 14th, 1926, a new lease was effected directly from the Zemels to Kussy, wherein the latter, for a fixed money rental, leased the use of the hall one night each week, conmmencing October 18th, 1926, over a period of twenty-three weeks, for the conducting of boxing exhibitions; reserving to the Zemels, however, or to their concessionnaires, the exclusive right to sell drinks, tobacco and refreshments and for their servants and agents to enter the premises during performances for that purpose; also reserving to the Zemels five ringside seats at each performance. At least two of the Zemels were present at every performance. Steinmetz, manager for the owners, was also present at each performance, taking care of the heat, looking after the lights and the like. It was he who observed that the plaintiff was injured and went to his assistance.

At one end of the hall was a removable platform made in numerous sections, supported by twelve wooden horses, and

sustaining wooden benches which constituted the cheapest seats for the exhibition; an equipment that was not and never had been owned by the Zemels. It had been acquired by the former tenant Samel to enlarge the seating capacity of the hall, had been sold by Samel to Kussy along with the assignment of the lease and belonged to Kussy at the time of the accident. But it was used ocasionally by the Zemels for exhibitions, wrestling bouts and otherwise and there were times when, to enable the premises to be used for other purposes, the platform was removed by Steinmetz after Kussy's boxing exhibition and again placed in position by Steinmetz in season for the event of the ensuing week. In fact Steinmetz had set up the platform just a few hours before the exhibition at which the plaintiff was injured. While there is a factual dispute, there is evidence that Steinmetz did these acts as the agent of the Zemels.

Plaintiff, on the evening of the accident, had occupied a ringside seat on the main floor, and after the exhibition sought, along with others, to go out by mounting the platform and using the exit therefrom. He reached the platform by stepping on a chair and over a railing. Near the front of the space occupied by the platform were two radiators reaching slightly above the level of the aisle portion of the platform. The platform was fitted over them. The testimony for the plaintiff is that the radiators, standing end to end, were about two feet apart, that there was a single long opening in the platform to accommodate both of the radiators, that the space between the latter, to a width of eight or ten inches, was open and unprotected and that plaintiff, as he moved along the aisle of the platform, having traveled about half the length thereof, inadvertentdly stepped in that opening and was injured. According to the plaintiff's evidence, the hole was a defect in the floor of an aisle constructed and intended to be used, for the passage of patrons. There were *indicia*, as for instance the evenly cut edges of the surrounding boards, that the condition was purposeful and was not the result of wear or of a recent mishap.

To summarize, the Zemels never surrendered exclusive

occupancy of the premises to the tenant, even during the latter's part-time possession; the defect that occasioned the injury was in a removable sectional platform owned by the tenant but used jointly by him and by the Zemels; the platform was, as occasion required, removed and installed by the Zemels and was set up by the Zemels and turned over by them to the tenant at five o'clock in the afternoon for the evening's public entertainment at which plaintiff was injured. We think that with such a state of facts the Zemels, under the theory of our cases (*Eckman* v. *Atlantic Lodge,* 68 *N. J. L.* 10), were bound to use reasonable care to see that the platform was properly constructed and was maintained in fit condition for the purposes for which it was used, and that they were responsible for an injury resulting to a spectator from failure in that regard. We cannot say that an owner of a public hall who sets up a platform in preparation for a public exhibition to be given by the evening's lessee and leaves, in or bordering on an aisle where patrons are expected to pass, a hole of such proportions that a man, accidently stepping therein, would sink to his middle is not guilty of actionable negligence even though the platform is not his property. Whether contradictions in the evidence should be resolved into the facts that we have assumed and whether the owners had exercised the care to which they were obligated were for determination by the jury. The court properly refused the motions for nonsuit and for direction of verdict.

It is said, however, that the complaint only charged the owners with maintaining a nuisance and did not count against them in the respect above mentioned. Assuming this to be so, the issue that we have discussed was fully and fairly threshed out at the trial. One of the reasons given on the owners' motion for nonsuit at the close of plaintiff's case was:

"The next ground is that the defendant Zemel owed no duty to inspect. We did not run the fight. It was not our exhibition and it was not our platform and we owed no duty to inspect, under the lease put in evidence, and therefore I respectfully ask for a nonsuit."

The motion was denied and the issue of duty to inspect,

which is a phase of reasonable care, was then clearly raised. On the defense various witnesses both on direct and cross-examination were questioned at length concerning facts pertinent thereto. The doctrine of reasonable care was fully charged to the jury. No exception thereto is before us. Where, as here, the real question is controversy has been fully and fairly tried, though not specifically pleaded, and the complaining party has not been surprised or injured, the reviewing court has power to amend the pleadings in order to support the judgment (*Levenson Wrecking Co.* v. *Gatti-Mcquade Co.*, 93 *N. J. L.* 184), and we will exercise that power. *Klie* v. *Hollstein*, 98 *Id.* 473.

The judgment below will be affirmed.