EVELYN A. AASER v. THE CITY OF CHARLOTTE, THE AUDITORIUM-COLISEUM AUTHORITY AND CHARLOTTE HOCKEY CLUB, INC.

(Filed 3 November, 1965.)

**1. Municipal Corporations §§ 5, 10—**

In operating or leasing an arena for the holding of exhibitions and athletic events, and in operating refreshment stands in the corridors of the building during such events, a municipality acts in a proprietary capacity, and has the same liability as a private person or corporation for injuries to a patron from unsafe conditions.

**2. Same; Games and Exhibitions § 2—**

Where a city, in leasing an arena for an athletic game, retains the privilege of occupying and using the corridors for the operation of refreshment stands, the lease of the arena itself does not relieve the municipality of liability for an injury to a ticket holder injured in one of the corridors.

**3. Same; Negligence § 37a—**

One who purchases a ticket for an athletic game is an invitee of the operator of the exhibition and, while in a corridor providing access to portions of the building which his ticket entitles him to enter, is an invitee of the owner of the building who had retained the right to control the corridors.

**4. Games and Exhibitions § 2—**

The promoter of an athletic event is not an insurer of the safety of patrons purchasing tickets, but is under duty to exercise reasonable care to guard against creating a hazard and the duty to use reasonable care to discover and remove dangerous conditions of which he has actual or implied knowledge.

**5. Same—**

What constitutes reasonable care on the part of a promoter of an athletic event varies with the circumstances and extends not only to the physical conditions of the premises themselves but also to foreseeable activities of his employees, the contestants, and the spectators.

**6. Same—**

The promoter of an athletic event is charged with notice of dangerous conditions or activities created or engaged in by its employees, but as to

acts of third persons he is liable only for those injuries resulting from a condition or activity of which he had knowledge which had existed for a sufficient length of time for him to have discovered and removed the danger in the exercise of due diligence.

**7. Same— Evidence held insufficient to show implied knowledge of dangerous activities of boys in corridors of arena.**

Plaintiff, a paying spectator, was injured when her ankle was hit by a puck as she was walking along a corridor in the arena where she was attending a hockey game. Plaintiff's evidence tended to show that immediately after the injury she saw boys with hockey sticks playing in the corridor, and that boys had been seen before playing in the corridor with hockey sticks and pucks, and that on prior occasions some boys had been seen kicking paper cups about in the corridor. *Held:* Nonsuit should have been entered, since the evidence fails to show the boys had been playing with hockey sticks and pucks in the corridor for a sufficient length of time to permit an inference of implied notice of such dangerous activities, and since there was no evidence tending to show that the kicking of paper cups along the corridors was either dangerous or recurring or known to the proprietor.

**8. Appeal and Error § 51—**

On appeal from the overruling of motion to nonsuit, incompetent evidence admitted over objection must be considered in passing upon the sufficiency of the evidence.

**9. Trial § 22—**

Conflicting evidence offered by plaintiff must be resolved in plaintiff's favor in determining the sufficiency of evidence to overrule nonsuit.

APPEAL by the defendants, City of Charlotte and the Auditorium-Coliseum Authority, from *Brock, S.J.,* 25 January 1965 Civil Session, Schedule "C" of MECKLENBURG.

The plaintiff alleges that on 6 December 1963 she was a spectator at an ice hockey game played in the Coliseum owned by the city of Charlotte, and administered for it by its agency, the Auditorium-Coliseum Authority, hereinafter called the Authority, having purchased a ticket entitling her to admission thereto. She sues the city, the Authority and the Charlotte Hockey Club, Inc., the promoter of the hockey game, for injuries she sustained when struck by a hockey puck while walking in a corridor of the Coliseum. She alleges that a group of young boys were playing in the corridor, knocking the puck back and forth with hockey sticks and, in their play, struck the puck and drove it against her ankle. She further alleges that the defendants had prior knowledge of such play in the corridors by groups of children and were negligent in failing to use due care to stop it, thus failing to exercise reasonable care to keep the premises in a safe condition for use by their invitees, including the plaintiff.

The defendants in their respective answers deny all allegations of

negligence and deny that they had any knowledge of such acts and conduct by any group of children, including the group alleged to have been so playing at the time of the plaintiff's injury.

At the close of the evidence offered by the plaintiff the court entered judgment of nonsuit as to the defendant Charlotte Hockey Club, Inc., but denied the motions therefor by the city and the Authority. The jury rendered a verdict in favor of the plaintiff, finding her damages to be $2,500 and judgment was rendered thereon.

The plaintiff's own testimony is to the effect that: She and her husband, having purchased tickets entitling them to admission, went to the Coliseum on 6 December 1963 to witness the hockey game being played there that evening. During an intermission she left her seat and went to a hospitality room maintained by the Hockey Club for the entertainment of holders of season tickets, such as the plaintiff. Leaving the hospitality room, she was walking in the corridor toward the ladies' rest room when she was struck upon her right ankle with a hockey puck, resulting in a fracture of the ankle. As soon as she was struck she looked to her right and observed eight or ten young boys about 50 feet from her, running away and carrying hockey sticks. Upon her return to the hospitality room she saw therein Police Officer Zagar and R. H. Gilland, a director of the Hockey Club and told them what had occurred. Gilland replied that "they had been playing in the hallways before with hockey pucks and sticks." He asked Officer Zagar to go out and investigate, which Zagar did. As she walked initially along the corridor to the hospitality room the plaintiff did not observe any children playing with hockey sticks or pucks. She stayed in the hospitality room about five minutes, then went back out into the corridor to go to the rest room. She walked some 25 feet along the corridor on this occasion but did not observe the children until after she was struck. She had never before observed or heard of such playing in the corridors.

R. H. Gilland, called as a witness by the plaintiff, testified: The hospitality room was operated by the Hockey Club. He has frequently attended hockey games at the Coliseum. He has seen boys playing in the corridor but had never seen or heard of any children playing with hockey sticks and hockey pucks in the vicinity of the hospitality room prior to the occasion on which the plaintiff was injured.

Harold Love, a witness for the plaintiff, testified that on prior occasions he had observed boys kicking paper cups about in other corridors while hockey games were in progress, but had not observed any playing with hockey sticks and pucks.

Police Officer Zagar, who was also called as a witness by the plaintiff, testified that on the evening in question he was wearing his uniform but was not on duty as a city policeman. He was employed that evening by the Hockey Club. He was in the hospitality room when the plaintiff told him she had been hit with a hockey puck by boys playing in the corridor. He went out into the corridor. A group of boys, one or two of whom had hockey sticks, were playing there and he stopped them. On previous occasions he had observed boys playing in the hallway, kicking empty cups about, but he was unable to say whether or not on those occasions he had seen any boys in the corridors with hockey sticks.

The lease from the Authority to the Hockey Club granted the latter "the right to use [the Coliseum] * * * together with the usual entrances and exits to the same * * * and such additional space as the Lessor in its discretion shall allocate to the Lessee to be used for the purpose of 36 Hockey Games * * * exclusive of lobbies, general offices and all space in halls, corridors, basements, grounds, and so forth, used by the Lessor for concessions * * * all of which * * * are hereby expressly reserved by Lessor to its own use, with the privilege of occupying and using same at any and all times during the term of this agreement." The agreed rental was a share in the gross box office receipts. Free access at all times to all space occupied by the Lessee was reserved to the Authority and its officers and employees.

Before filing suit, the plaintiff gave due notice of her injury and claim to the city and to the Authority.

*Boyle, Alexander and Carmichael for defendant appellants.*
*Elbert E. Foster and Richard T. Meek for plaintiff appellee.*

LAKE, J. The Coliseum is an arena for the holding of exhibitions and athletic events owned by the city of Charlotte and administered for it by the Authority to produce revenue and for the private advantage of the compact community. A city is engaging in a proprietary function when it operates such an arena, or leases it to the promoter of an athletic event, and when it operates refreshment stands in the corridors of the building for the sale of drinks and other items to the patrons of such an event. *Carter v. Greensboro,* 249 N.C. 328, 106 S.E. 2d 564; *Millar v. Wilson,* 222 N.C. 340, 23 S.E. 2d 42. Consequently, the liability of the city and of the Authority to the plaintiff for injury, due to an unsafe condition of the premises, is the same as that of a private person or corporation. *Carter v. Greensboro, supra; Rhodes v. Asheville,* 230 N.C. 134, 52 S.E. 2d

371; *Millar v. Wilson, supra;* McQuillin, Municipal Corporations, 3rd Ed., § 53.91.

Upon this appeal it is not necessary for us to determine the duty owed to a ticket holder by the owner of an arena who has leased it to the promoter of an athletic exhibition so as to divest the owner of all control over the building. Here, by the terms of the lease, the city, through the Authority, retained a substantial measure of use of and control over the corridors of the Coliseum, even while the lessee was using it for its hockey games. The mere execution of such a lease does not free the city and the Authority from liability to a ticket holder injured in the corridor while in the Coliseum to attend a hockey game. *Davis v. Atlanta,* 84 Ga. App. 572, 66 S.E. 2d 188; *Johnson v. Zemel,* 109 N.J.L. 197, 160 A. 356; 4 Am. Jur. 2d, Amusements and Exhibitions, § 63.

One who purchases a ticket and, pursuant thereto, enters such an arena is an invitee of the operator of the exhibition. *Williams v. Strickland,* 251 N.C. 767, 112 S.E. 2d 533; *Hahn v. Perkins,* 228 N.C. 727, 46 S.E. 2d 854; *Anderson v. Amusement Co.,* 213 N.C. 130, 195 S.E. 386; Strong, N. C. Index, Negligence, § 37a. While in a corridor providing access to portions of the building which his ticket entitles him to enter, he is also the invitee of the owner of the building who has retained the right to control the corridors. No appeal having been taken from the judgment of nonsuit as to the Hockey Club, we are not here concerned with the liability of the promoter-lessee to a ticket holder injured in the corridor which the owner has retained the right to use and control. Nor are we concerned here with the right of the ticket holder against the owner of the building for injury received in the portion of the Coliseum in which the hockey game is actually played. The plaintiff was injured in a corridor where she had a right to be as the holder of a ticket to the hockey game. The city and the Authority had the right to control the corridor. As to her use of and injury in this corridor, the relation of the plaintiff to them and their duty to her are the same as if the city were a private corporation both owning the building and promoting the hockey game therein.

One who, expressly or by implication, invites others to come upon his premises to view, for a price, an athletic event being carried on therein has the duty to be reasonably sure that he is not inviting them into danger and must exercise reasonable care for their safety. *Dockery v. Shows,* 264 N.C. 406, 142 S.E. 2d 29. He is not an insurer of their safety and is liable only for injuries proximately caused by his failure to use reasonable care to discover and remove, or otherwise protect against, dangerous conditions, activities or occur-

rences upon his premises. *Dockery v. Shows, supra; Lynn v. Wheeler,*
260 N.C. 658, 133 S.E. 2d 514; *Williams v. Strickland, supra.* See
also: *Revis v. Orr,* 234 N.C. 158, 66 S.E. 2d 652 (dance hall);
*Anderson v. Amusement Co., supra* (theatre).

Since what constitutes reasonable care varies with the circum-
stances, the vigilance required of the owner of the arena in discov-
ering a peril to the invitee and the precautions which he must take
to guard against injury therefrom will vary with the nature of the
exhibition, the portion of the building involved, the probability of
injury and the degree of injury reasonably forseeable. The law
does not require the owner to take steps for the safety of his in-
vitees such as will unreasonably impair the attractiveness of his
establishment for its customary patrons. Thus, a dance hall need
not be brightly lighted *(Revis v. Orr, supra)* and the bleachers bor-
dering the more remote areas of a baseball field need not be screened
against batted balls. Those who attend athletic contests and similar
amusements or exhibitions must anticipate that they will be con-
ducted in the usual manner and surroundings. Thus, the owner of
an arena has been held not liable for injury resulting from the
normal jostling of a crowd at a hockey game. *Klish v. Alaskan
Amusement Co.,* 153 Kan. 93, 109 P. 2d 75.

The duty of the owner extends to the physical condition of the
premises, themselves, and to contemplated and foreseeable activities
thereon by the owner and his employees, the contestants and the
spectators. The amount of care required varies, but the basis of lia-
bility for injury to the invitee from any of these sources is the same
—the failure of the owner to use reasonable care under the circum-
stances.

"[I]t is only when the dangerous condition or instrumentality is
known to the occupant [owner], or in the exercise of due care should
have been known to him * * * that a recovery may be permitted."
*Revis v. Orr, supra.* In the place of amusement or exhibition, just as
in the store, when the dangerous condition or activity is created or
engaged in by the owner or his employee, the owner is charged with
immediate knowledge of its existence, but where it arises from the
act of third persons, whether themselves invitees or not, the owner
is not liable for injury resulting unless he knew of its existence or it
had existed long enough for him to have discovered it by the exer-
cise of due diligence and to have removed or warned against it.
*Norris v. Department Store,* 259 N.C. 350, 130 S.E. 2d 537. *Hughes
v. Enterprises,* 245 N.C. 131, 95 S.E. 2d 577.

"The proprietor is liable for injuries resulting from the horse-
play or boisterousness of others, regardless of whether such conduct

is negligent or malicious, if he had sufficient notice to enable him to stop the activity. But in the absence of a showing of timely knowledge of the situation on his part, there is no liability." 4 Am. Jur. 2d, Amusements and Exhibitions, § 59. Thus, in *Whitfield v. Cox*, 189 Va. 219, 52 S.E. 2d 72, the promoter of a wrestling match, not so shown to have been negligent, was held not liable for injury to a lady patron struck by a whiskey bottle suddenly thrown by another patron. On the other hand, in *Hughes v. Baseball Club*, 359 Mo. 993, 224 S.W. 2d 989, 16 A.L.R. 2d 904, the owner of a baseball park was held liable for injury to a lady patron, injured, when leaving the park after a game, by the horseplay of a group of boys whom the owner encouraged to gather at that point in the hope of being employed by the owner to go through the stands and pick up seat cushions after the crowd left and who habitually engaged in rowdy play while so waiting. See also: *Hawkins v. Theatres Co.*, 132 Me. 1, 164 A. 628; *Rawson v. Massachusetts Operating Co.*, 328 Mass. 558, 105 N.E. 2d 220; 29 A.L.R. 2d 907; Anno: 16 A.L.R. 2d 912, 932; Restatement, Torts, § 348 (1934); Prosser, Law of Torts, 3rd Ed. (1964), 405.

The burden rests upon the plaintiff to prove that the city, or the Authority, had knowledge of the fact that the group of boys who injured her was, or probably would be, playing in a dangerous manner in the corridors of the Coliseum, or would have so known had it exercised due care in observing conditions in the corridors on this evening or other occasions. On a motion for judgment of nonsuit her evidence must be taken to be true and considered in the light most favorable to her and all reasonable inferences therefrom which are favorable to her must be drawn. *Jones v. Horton*, 264 N.C. 549, 142 S.E. 2d 351; *Ammons v. Britt*, 256 N.C. 248, 123 S.E. 2d 579.

When so considered, the evidence does not justify such a finding. An inference may reasonably be drawn from the plaintiff's testimony that the hockey puck which struck her was driven along the corridor and against her ankle as the result of its being struck with a hockey stick by one of the boys whom she thereafter observed running in the corridor. Such activity by a group of boys in the corridor made it an unsafe place for use as a corridor by the plaintiff and other invitees of the city and the Authority, but there is no showing of any knowledge of this condition in the corridor by the city or the Authority or that either could have discovered it by the exercise of reasonable care in inspecting the corridors. The plaintiff had passed along this very corridor five minutes earlier and had not observed the boys. Subsequently, she walked from the door of

the hospitality room to the point where she was struck without noticing their play. There is nothing to show that anyone saw these boys or any others playing in the corridor with hockey sticks and pucks or in any other dangerous manner on this evening before the plaintiff was struck.

The plaintiff did testify that Mr. Gilland told her, when she informed him of her injury, that "they had been playing in the hallways before with hockey sticks and pucks." This was admitted in evidence over objection by the city and the Authority. It is not necessary to pass upon the validity of these objections, for, even though incompetent, this evidence was admitted and must be considered as if competent for the purpose of the motion for judgment of nonsuit. *Ballard v. Ballard,* 230 N.C. 629, 55 S.E. 2d 316. It must, for this purpose, be taken as true notwithstanding the testimony by Mr. Gilland, called as a witness by the plaintiff, that he had never seen or been told of children playing with these things in the vicinity of the hospitality room. Conflicts in evidence offered by the plaintiff must be resolved in her favor for the purposes of this motion. *Coleman v. Colonial Stores,* 259 N.C. 241, 130 S.E. 2d 338. Nevertheless, this shows nothing as to when or how long such activities were observed. There is nothing to show that the city and the Authority did not on such occasion, whenever it was, move promptly and effectively to stop the dangerous activity. There is nothing to show that this same group of boys was involved in the former play or that the city or the Authority had any reason to suppose it would recur.

The testimony that on unspecified occasions some boys had been observed kicking paper cups about in a corridor of the Coliseum does not justify an inference that such activity was either dangerour or recurring or known to the city or the Authority.

The evidence offered by the plaintiff is, therefore, not sufficient to justify a finding that a condition precedent to her right to recover from the city or the Authority existed. Therefore, the motions of the city and the Authority for judgment of nonsuit should have been granted.

Reversed.