SAMUEL MANGANELLO v. PERMASTONE, INC.

No. 7612SC275

(Filed 6 October 1976)

1. **Negligence § 53— swimming pool — duty of owner to patrons**
    The owner or proprietor of a bathing or swimming resort or pool as a place of public amusement is not an insurer of the safety of his patrons, but he must exercise ordinary and reasonable care and prudence to have and maintain his place and all appliances intended for the use of patrons in a reasonably safe condition for all ordinary, customary, and reasonable uses to which they may be put by patrons, and to use ordinary and reasonable care for the safety of his patrons, and he may be liable for injury to a patron from breach of his duty.

Manganello v. Permastone, Inc.

2. Negligence § 53— swimming pool — dangerous activity of invitees —
duty of owner to other patrons

   Where a dangerous condition or activity occurring in a bathing
   or swimming resort or pool arises from the act of third persons,
   whether themselves invitees or not, the owner of the resort or pool is
   not liable for injury resulting unless he knew of its existence or it
   had existed long enough for him to have discovered it by the exercise
   of due diligence and to have removed or warned against it.

3. Negligence § 57— swimming pool — dangerous horseplay of patrons —
duty of owner to other patrons

   In an action to recover against a swimming facility proprietor
   for injuries sustained by plaintiff when a third person, who was en-
   gaging in horseplay in the lake, fell on him, the trial court properly
   granted defendant's motion for a directed verdict, since the evidence
   indicated that the horseplay had been going on for 30-45 minutes at
   some distance from plaintiff, plaintiff considered the horseplay no
   "problem" to him, plaintiff and the people engaged in the horseplay
   then moved to different locations in the lake so that the activity
   became dangerous to plaintiff, and the danger did not exist for a
   sufficient period of time to put defendant on notice.

   Judge MARTIN dissenting.

APPEAL by plaintiff from *Hall, Judge*. Judment entered
20 November 1975 in Superior Court, CUMBERLAND County.
Heard in the Court of Appeals 18 June 1976.

   In his complaint plaintiff alleges that defendant operated
Permastone Lake; that plaintiff went swimming in the lake on
Labor Day in 1973; that other swimmers, whose names plain-
tiff does not know, were engaged in dangerous horseplay; that
one of those swimmers fell on plaintiff, causing injuries to his
neck and head; and that the horseplay had been going on long
enough for defendant's lifeguards to have seen and stopped it.
In its answer defendant denied negligence and pleaded con-
tributory negligence.

   After plaintiff presented his evidence at trial, defendant's
motion for a directed verdict was allowed and from judgment
dismissing the action, plaintiff appealed.

   *Smith, Geimer & Glusman, P.A., by Kenneth Glusman, for
plaintiff appellant.*

   *Clark, Clark, Shaw & Clark, by Heman R. Clark, for de-
fendant appellee.*

BRITT, Judge.

The sole question presented by this appeal is whether the trial court erred in granting defendant's motion for directed verdict. We hold that the court did not err.

[1]  The degree of care that the proprietor of a swimming facility owes his customers is well summarized in *Wilkins v. Warren*, 250 N.C. 217, 219, 108 S.E. 2d 230, 232 (1959), where our Supreme Court said:

> "... the general rule is stated in these words: 'The owner or proprietor of a bathing or swimming resort or pool as a place of public amusement is not an insurer of the safety of his patrons, but he must exercise ordinary and reasonable care and prudence to have and maintain his place and all appliances intended for the use of patrons in a reasonably safe condition for all ordinary, customary, and reasonable uses to which they may be put by patrons, and to use ordinary and reasonable care for the safety of his patrons, and he may be liable for injury to a patron from breach of his duty.' (Citations omitted.)"

[2]  While the proprietors of bathing or swimming resorts or pools owe to their patrons a duty to exercise due care, not only to provide a safe and proper place but to supervise the premises in order to protect patrons from wanton and unprovoked injuries by other persons there, our Supreme Court has said:

> " '[I]t is only when the dangerous condition or instrumentality is known to the occupant [owner], or in the exercise of due care should have been known to him . . . that a recovery may be permitted.' (Citation omitted.) In the place of amusement or exhibition, just as in the store, when the dangerous condition or activity is created or engaged in by the owner or his employee, the owner is charged with immediate knowledge of its existence, *but where it arises from the act of third persons, whether themselves invitees or not, the owner is not liable for injury resulting unless he knew of its existence or it had existed long enough for him to have discovered it by the exercise of due diligence and to have removed or warned against it.* (Citations omitted.)" *Aaser v. City of Charlotte*, 265 N.C. 494, 499, 144 S.E. 2d 610, 615 (1965). (Emphasis ours.)

We now summarize the stipulations and evidence presented at trial. It was stipulated that the defendant operated a recreational facility, including Permastone Lake; that the lake was open to the public for swimming upon payment of a fee; and that defendant employed lifeguards at the lake.

Plaintiff testified in pertinent part:

[3]   On Labor Day 1973 he, his three children and two other families went to Permastone Lake, a body of water containing one or two acres and located west of Hope Hills, N. C. At that time he was 39 years old and a sergeant first-class in the U. S. Army in which he had served for sixteen years. Plaintiff and his group paid the required admission fees and thereafter he and the seven or eight children in the party went into the water.

The lake was moderately crowded and he and the children spent approximately an hour in the area of a sliding board. While the children slid down the board he stood in water up to his chest and would catch them. Approximately 30 or 45 minutes after he entered the water, he heard a lot of shouting nearby and observed several young men, some 20 or 30 feet away, getting on each other's shoulders and jumping into the water. At that distance "they weren't causing me any problems." About 30 to 45 minutes later, feeling that he and the children had been in the water long enough, he sent the children to a dock or pier some 50 or 60 feet away and began swimming to the dock himself. Soon thereafter one of the young men (who was jumping into the water from his father's shoulders) fell on top of him, pushed him to the bottom of the lake and caused the injuries complained of.

On cross-examination plaintiff stated: " . . . I did not see any danger to myself or my children or the people around the slide while I was there with the children. The last time I saw the men they were far enough away that I was not concerned about them. . . . "

Plaintiff's witness, Mrs. Grombkowski, testified in pertinent part: She, her husband and children, went with plaintiff to Permastone Lake on the day in question. Her children, along with plaintiff's children, were playing on the sliding board and plaintiff was in the water catching them. Not long after they entered the water, she saw the young men engaged in horseplay nearby. They gradually moved closer to the sliding

board where plaintiff was. After plaintiff left the sliding board and got halfway to the pier, she saw one of the young men jump from the shoulders of his father and land on plaintiff's head. She estimated that the sliding board was 50 or 60 feet from the end of the dock or pier. There were two lifeguards, approximately 16 or 17 years old, on duty. Part of the time they were watching the people in the water but at other times they were talking to girls. They did not go to plaintiff when he was hurt.

On cross-examination Mrs. Grombkowski stated: "I did not keep my eyes on them the whole time. I don't really know whether they gradually moved up or moved up suddenly. . . . As he was swimming towards us, I saw this danger out of the corner of my eye and hollered to him. He was swimming. . . . "

Plaintiff's witnes Cobb, a Y.M.C.A. physical director, testified that the American Red Cross and the Y.M.C.A. had promulgated certain standards of aquatic safety as guidelines for people operating swimming facilities; that these standards were accepted in Cumberland County; and that it was not acceptable aquatic practice to allow young men to get on another's shoulders and do "backflips" into the water.

Plaintiff argues that in this case it was incumbent on him to show (1) that he was an invitee, (2) some activity dangerous to him was occurring, (3) the dangerous activity had been going on for a sufficient period of time for defendant, in the exercise of reasonable care, to have taken notice of it, and (4) defendant did not use reasonable means to stop the dangerous activity. We agree with the argument but do not feel that the evidence established the points suggested.

It goes without saying that the activity engaged in by the ones who caused plaintiff's injury was dangerous to him only if it occurred in close proximity to him. He testified that for some 30 to 45 minutes the young men engaged in the activity were 20 to 30 feet from him and caused him "no problem." The "problem" arose when plaintiff left the sliding board and was walking or swimming to the dock approximately 50 or 60 feet away. At that time the ones who caused his injury were changing their location—either gradually or suddenly—according to Mrs. Grombkowski. When plaintiff moved his position some 25 or 30 feet—one-half the distance from the sliding board to the dock—and the ones who caused his injury changed theirs, the hazardous situation was created.

Manganello v. Permastone, Inc.

The evidence failed to show that the hazardous situation thereby created existed for a sufficient period of time for defendant's lifeguards, in the exercise of reasonable care, to have taken notice of the situation and to have taken means necessary to alleviate it.

In *Aaser v. City of Charlotte, supra,* plaintiff was a paying spectator at an ice hockey game in the Charlotte Coliseum. She was injured when her ankle was hit by a puck as she was walking along a corridor. Her evidence was that immediately after the injury she saw boys with hockey sticks playing in the corridor and the director of the hockey club told her the boys had been playing in the corridor before that time with hockey pucks and sticks. The Supreme Court reversed a jury verdict for plaintiff, holding that a proprietor may be liable for injuries resulting from horseplay or boisterousness of others only if the defendant has had sufficient notice to enable him to stop the activity. We quote from the opinion:

> "Since what constitutes reasonable care varies with the circumstances, the vigilance required of the owner of the arena in discovering a peril to the invitee and the precautions which he must take to guard against injury therefrom will vary with the nature of the exhibition, the portion of the building involved, the probability of injury and the degree of injury reasonably foreseeable. The law does not require the owner to take steps for the safety of his invitees such as will unreasonably impair the attractiveness of his establishment for its customary patrons. . . . " 265 N.C. at 499, 144 S.E. 2d at 614.

Plaintiff appears to contend that defendant was put on notice with respect to a "dangerous activity" when the horseplay first began. We do not find this contention persuasive, particularly in view of plaintiff's testimony that those engaged in the activity were 20 or 30 feet away from him at the time and were no "problem" to him. The activity became dangerous to plaintiff when he moved some 25 or 30 feet and those engaged in the activity moved an unstated distance. We do not think the activity, after it became dangerous to plaintiff, existed for a sufficient period of time to put defendant on notice.

For the reasons stated, the judgment appealed from is

Affirmed.

Judge HEDRICK concurs.

Judge MARTIN dissents.

Judge MARTIN dissenting.

At trial, it was stipulated that defendant operated a recreational facility, including Permastone Lake, that the lake was open to the public for swimming upon payment of a fee, and that defendant employed lifeguards at the lake.

Plaintiff was in the area of a sliding board overseeing the children slide and swim; the water was up to his chest; he heard a lot of shouting nearby and saw several young men standing on each other's shoulders about 20 or 30 feet away; about 30 to 45 minutes later he told the children to get out of the water and he started swimming toward the dock; someone hit him on the neck and pushed him to the bottom of the lake; he was helped out of the water and felt severe pain from his head through his shoulders. Dr. Askins diagnosed the injury as a mild to moderate cervical sprain with no bone or joint abnormality, and he testified that the blow suffered at the lake could have caused the injury.

A YMCA physical director testified that the American Red Cross and the YMCA had promulgated certain standards of aquatic safety as guidelines for people operating swimming facilities; these standards were accepted in Cumberland County, and that it was not acceptable aquatic practice to allow young men to get on one another's shoulders and do back flips into the water.

On a motion for directed verdict by the defendant, the plaintiff's evidence must be taken to be true and considered in the light most favorable to him and he must be given the benefit of all reasonable inferences with the resolution of all inconsistencies in his favor. See *Anderson v. Butler*, 284 N.C. 723, 202 S.E. 2d 585 (1974); *Jones v. Satterfield Dev. Co.*, 16 N.C. App. 80, 191 S.E. 2d 435 (1972). Considered in this manner, the evidence in the instant case tends to show that a

directed verdict for the defendant should not have been granted. The evidence offered by plaintiff showed his presence at the pool as a patron, entitled to be there; the presence of other persons in the pool area; the conduct of those persons whereby they were riding, standing and jumping off the shoulders of each other in a dangerous manner; that this conduct continued for over twenty minutes to an hour without warning or hindrance by the defendant's lifeguards or anyone else to prevent it; that without warning, one of the persons engaged in the horseplay fell on plaintiff with resulting injury.

Mrs. Mary Ann Grombkowski, testified: "There were three men together and the father . . . and one of the boys would stand on his shoulders and jump backwards into the water. . . . Prior to the time the accident occurred, this jumping activity had gone on for about twenty minutes. Usually there were two lifeguards. There was one at the far end of the pier, the deep end, but I cannot say for sure if there was one at the shallow end. During the time that the activity of jumping off the shoulders was going on the men did not stay in the same place. They gradually moved out to where Sgt. Manganello was in the water. It took them about fifteen minutes to do this. . . . I saw him jumping off the shoulder right where Sam was and he landed on Sam's head. The young boy was jumping off his father's shoulder. He jumped backwards. His back struck Sgt. Manganello. Sam went down . . . he was knocked silly. . . . There were lifeguards at Permastone Lake on the third of September 1973. These were young teenagers about sixteen or seventeen years old. The lifeguards would sit around in their high chairs. Sometimes they would be watching and sometimes they would be talking to girls. There were a couple of girls around the lifeguards. I believe that the man that fell on Sam was seventeen or eighteen years old and he was about five and one-half feet tall."

> " '[I]t is only when the dangerous condition or instrumentality is known to the occupant (owner), or in the exercise of due care should have been known to him . . . that a recovery may be permitted.' (Citation omitted.) In the place of amusement or exhibition, just as in the store, when the dangerous condition or activity is created or engaged in by the owner or his employee, the owner is charged with immediate knowledge of its existence, but where it arises from the act of third persons, whether themselves

invitees or not, the owner is not liable for injury resulting unless he knew of its existence or it had existed long enough for him to have discovered it by the exercise of due diligence and to have removed or warned against it. (Citations omitted.)

'The proprietor is liable for injuries resulting from the horseplay or boisterousness of others, regardless of whether such conduct is negligent or malicious, if he had sufficient notice to enable him to stop the activity. But in the absence of a showing of timely knowledge of the situation on his part, there is no liability.' " *Aaser v. Charlotte,* 265 N.C. 494, 499, 144 S.E. 2d 610, 615 (1965).

Proprietors of bathing or swimming resorts or pools owe to their patrons a duty to exercise due care, not only in providing a safe and proper place as such, but in policing and supervising the place to protect those coming there from wanton and unprovoked assault and injuries at the hands of other persons there.

Liability for misconduct of patrons varies with the circumstances. The duty would be greater with respect to a swimming facility, when the water poses inherent dangers and where lifeguards are employed for the specific purpose of keeping a lookout over all patrons. In the instant case, the evidence is sufficient to show that the dangerous activity had been in progress for a sufficient time for the lifeguard to take notice of it and to control such behavior so as to have prevented the injury.

In *Sneed v. Lions Club,* 273 N.C. 98, 159 S.E. 2d 770 (1968), Higgins, Justice, speaking for the Court, said:

"Many courts and commentators have discussed the duties which swimming pool operators owe their paying invitees. The following appears to be a fair summary of the rules applicable to the questions presented in this appeal. The operator of a swimming pool for hire does not insure the safety of his invitees. He does, however, owe them the duty to exercise due care to see that his premises are reasonably safe for the purposes for which he offers them to the public. He is under a duty to install and maintain proper signs warning patrons of dangerous depths of the water. He should exercise ordinary care to provide a sufficient number of competent attendants to supervise the bathers and to rescue any of those who appear to be in danger. . . ."

Manganello v. Permastone, Inc.

In the case of *Quinn v. Smith Co.*, 5 Cir., 57 F. 2d 784, which originated in the Southern District of Florida, it was held that it was a breach of such duty owed by an operator of a swimming pool, to permit boisterous, rude and dangerous conduct of persons at the pool without taking appropriate steps to control and prevent the same.

In that case, in an opinion written by Judge Hutcheson, the court said (at page 785):

"* * * It goes without saying, in fact, it is not disputed, that proprietors of bathing pools owe to their patrons a duty to exercise due care, not only in providing a safe and proper place as such, but in policing and supervising the place to protect those coming there from wanton and unprovoked assault and injuries at the hands of other persons there. Especially is this duty laid upon proprietors with regard to women and children, to protect them from the rude, boisterous, and unprovoked attacks and assaults. The case made by plaintiff showed an egregious want of care, not only entitling her to go to the jury, but, if her testimony was believed, making a clear case for recovery. It showed her presence at the pool as a patron, entitled to be there; the presence there of other persons, invited to entertain and amuse those who, like plaintiff, came as paying guests; conduct of those persons, boisterous, rude, and dangerous to a degree, going on without let or hindrance, and with apparently no one there present to prevent it; that suddenly, and without warning, she was hurled into the pool by one of those persons, with resulting serious injury. Such evidence if believed made a clear case for recovery. It required the submission of plaintiff's case to the jury."

"The proprietor of a public indoor swimming pool was held in *Esposito v. St. George Swimming Club* (1932) 143 Misc. 15, 255 N.Y.S. 794, to be obligated to take precautions to avert injury when one patron dives before another emerges. The court said that since such proprietor solicits large numbers of people for profit he must be vigilant to protect them." Annot., 20 A.L.R. 2d 35 (1951).

"In *Murphy v. Winter Garden & Ice Co.* (1926, Mo. App.) 280 S.W. 444, the court held the owner of a skating rink liable for an injury sustained by a skater when she was pushed by one of several young men who had for some time previously

been attempting to trip and push girls who were skating, on the ground that the jury could find that the defendant had actual knowledge of the improper conduct of the two young men, since one of the girls informed an attendant of their conduct, and on the further ground that the jury could find that the defendant had constructive knowledge of their conduct in any event, since it was of such a nature as to have been noticeable to defendant's five attendants on duty. The court said that the standard of care by which the defendant's duty was to be measured was ordinary care under the circumstances, ordinary care always being a relative term. The interest of the case in connection with the present subject is heightened by the fact that the court held that, since negligence was the gist of the case, it was immaterial whether the young men purposely pushed the plaintiff or whether by their actions they merely created a menace to the proper conduct of the skating rink." Annot., 29 A.L.R. 2d 918 (1953).

"[W]here some boys had been throwing things around the theater, such as popcorn boxes and paper wads, and a boy attending the performance was struck in the eye by one of these objects, and there was evidence that no ushers had been on duty that day, and that the aisles were not being patrolled at the time of the injury, it was held that the theater operator could be found liable in *Pfeifer v. Standard Gateway Theater* (1951) 259 Wis. 333, 48 N.W. 2d 505, under the rule that when one assembles a crowd upon his property for purposes of financial gain to himself, he must use all reasonable care to protect patrons from injury from causes reasonably to be anticipated. In the exercise of this duty, said the court, it is incumbent upon the proprietor to furnish a sufficient number of guards or attendants to take necessary precautions, and whether the precautions taken were sufficient is ordinarily a question for the jury. The court noted that there was evidence as to how long the conduct of the boys had continued prior to the injury, and stated that such conduct should have attracted the attention of the attendants if there were attendants present, and that they in the exercise of reasonable care might have controlled this behavior so as to have prevented the injury. The court also held that it was not necessary for the plaintiff to establish what hit him and which of the other boys was responsible, the only direct testimony having been that of a companion who said that it was a spitball that hit the boy, the court stating that the law did not require every fact and circumstance which make up

Manganello v. Permastone, Inc.

a case of negligence to be proved by direct and positive evidence, and that proof of the fact of negligence may rest entirely in circumstantial evidence, where the circumstances are such as to take the case out of the realm of conjecture and within the field of legitimate inference." Annot., 29 A.L.R. 2d 919 (1953).

"[T]he court in *Hill v. Merrick* (1934) 147 Or. 244, 31 P. 2d 663, where the plaintiff, a girl of sixteen, while standing on the highdive platform, was bumped, or shoved off, by one of a group of boys playing on the platform within the view of the pool attendant, held that the defendant's failure to use reasonable care to furnish a reasonably safe pool and high dive, by permitting children to play on the steps and platform of the high dive, was negligence. The court further held that the evidence indicated that the proximate cause of the accident was the negligence of the defendant in permitting the children to play on the high dive and to jostle or push the plaintiff, and not an independent intervening act by a responsible third party. It was also held that the jury was warranted in finding that the plaintiff was not guilty of contributory negligence, since the evidence was uncontradicted that the plaintiff did not realize the danger to which she was subjected by reason of the lack of supervision and the dangerous condition which the defendant permitted to exist." Annot., 48 A.L.R. 2d 165 (1956).

"[T]he court in *Boardman v. Ottinger* (1939) 161 Or. 202, 88 P. 2d 967, where the plaintiff, while a patron at the defendants' swimming pool, was struck in the face with a ball which four young men in the pool were using for a game of catch, and which, according to testimony favorable to the plaintiff, was being thrown with great force, stated that the defendants' argument concerning a responsible, independent agency was without merit, since it was their duty to protect the plaintiff against injury from such an agency if, through the exercise of reasonable care, they could have discovered the wrongful conduct and taken the appropriate measures, and that if the players were throwing the ball with the violence described by the testimony favorable to the plaintiff, an inference was warranted that the defendants should have taken some precautions, and held that the trial court properly denied the motions for a nonsuit and a directed verdict." Annot., 48 A.L.R. 2d 165 (1956).

In the case at bar the horseplay or boisterousness was of such nature as to have been noticeable and attract the attention

Beasley-Kelso Associates v. Tenney

of defendant's two lifeguards. It continued unabated for a minimum of twenty minutes. In the exercise of due care it should have been foreseeable to the lifeguards that such conduct was likely to cause injury to other patrons if allowed to continue, and, there was ample time to control such behavior.

Thus, the evidence permitted a finding that plaintiff was an invitee with the legal obligation on the defendant (1) to maintain the premises in a reasonable safe condition for the legitimate use of the invitee, (2) to exercise ordinary care to provide a sufficient number of competent attendants to supervise the bathers, and (3) police and supervise the place and protect patrons from injury at the hands of other persons there.

Since the owner owes such duty to its patrons, it clearly becomes a jury question as to whether in the instant case the proximate cause of plaintiff's injury did or did not arise through a breach of such duty.

I vote to reverse.