FLORA DALE R. AMMONS AND CARLTON E. AMMONS, ADMINISTRATORS OF GWENDOLYN FAYE AMMONS, DECEASED, v. MARY WADDELL BRITT.

(Filed 12 January, 1962.)

**1. Appeal and Error § 51—**

Where defendant introduces evidence, only the motion to nonsuit made at the close of all the evidence will be considered.

**2. Trial § 21—**

Where defendant introduces evidence and renews his motion to nonsuit, the court must consider all of the evidence, whether offered by plaintiff or defendant, in the light most favorable to plaintiff, but even so, only that evidence offered by defendant that tends to clarify or explain plaintiff's evidence and is not in conflict therewith may be considered, and defendant's evidence which tends to establish another or different state of facts or which tends to contradict or impeach plaintiff's testimony should not be considered, the credibility of defendant's evidence being a question for the jury.

**3. Automobiles § 41m—**

Plaintiff's evidence that their intestate, a six-year old child, was standing on the shoulder of the road waiting to cross immediately prior to the accident and that at such point the child could have been seen by a motorist some five hundred yards away, *is held* to take the issue of negligence to the jury upon the question whether defendant, in the exercise of due care, could and should have seen the child in a perilous position at a time when she could and should have taken steps to avoid the injury, notwithstanding testimony of a witness for defendant that the child ran into the street without stopping and collided with the right side of defendant's vehicle.

APPEAL by plaintiffs from *McKinnon, J.,* July Civil Term 1961 of ROBESON.

Administrators' action to recover damages for the wrongful death of their intestate, a six-year old girl, allegedly caused by the negligence of defendant.

It was stipulated that the intestate, Gwendolyn Faye Ammons, "came to her death on August 30, 1960, as a result of a collision between her person and the automobile driven by Mary Waddell Britt."

The collision occurred in a residential district of Lumberton, on Carolina Avenue, a short distance south of its intersection with B Avenue. Carolina Avenue runs generally north-south. It is straight, level and paved to a width of approximately twenty feet, with dirt shoulders. There are no sidewalks.

Prior to and at the time of the collision, defendant was operating a 1952 Ford automobile south on Carolina Avenue.

Mrs. Caulder's residence was on the southeast corner of said intersection and the Buck Webb residence was on the southwest corner. Both fronted on Carolina Avenue and were on opposite sides of and directly across the street from each other. A hedge was along the front of the Buck Webb premises. A break in this hedge was in line with the approach from Carolina Avenue to the steps and porch of the Buck Webb residence. In back of the Buck Webb residence, fronting towards B Avenue and ten feet back (south) therefrom was the Buck Webb store. There was no sidewalk along the south side of B Avenue. A dirt path extended from the area in front of the store, near and approximately parallel with the side of the residence, to the southwest corner of said intersection.

Additional pertinent facts will be stated in the opinion.

Plaintiffs alleged, *inter alia,* that defendant, by the exercise of due care, could and should have observed their intestate on or near Carolina Avenue, and by sounding her horn, reducing her speed, or stopping, could and should have avoided the collision and the intestate's death, and that her failure to do so constituted actionable negligence.

Defendant, by answer, denied plaintiffs' allegations as to her negligence.

Evidence was offered by plaintiffs and by defendant.

At the close of all the evidence, the court, allowing defendant's motion therefor, entered judgment of involuntary nonsuit. Plaintiffs excepted and appealed.

*Varser, McIntyre & Hedgpeth and Hackett & Weinstein for plaintiffs appellants.*

*Johnson, Biggs & Britt for defendant appellee.*

BOBBITT, J.  Evidence offered by plaintiffs, when considered in the light most favorable to them, tends to show these facts: Shortly before 8:00 o'clock, on the morning of August 30, 1960, Gwendolyn's mother took her to the Caulder residence. Mrs. Caulder, as theretofore, was to care for Gwendolyn while her mother was at work. Before leaving, Gwendolyn's mother gave her permission "to go to the store that morning." The collision occurred about 1:50 p.m. "(A) short time" —"not too long"—prior to the collision, Jewel Parker, from the living room of the Caulder residence, saw Gwendolyn. She was then in front of the Buck Webb residence, standing still, near the west edge of the paved portion of Carolina Avenue, with a pepsi-cola in one hand and a coca-cola in the other. (This dirt shoulder extended approximately

six feet from the Buck Webb hedge to the west edge of the paved portion of Carolina Avenue.) After hearing a noise, "like she (Gwendolyn) dropped a bottle," Jewel Parker went out and saw Gwendolyn lying on the paved portion of Carolina Avenue, "on the side next to Buck Webb's." Gwendolyn was then "lying sort of slanting," with her head "toward Buck Webb's" and her feet some three feet onto the paved portion of Carolina Avenue. The area where Gwendolyn was standing could be seen by motorists traveling south on Carolina Avenue for a distance of five hundred yards.

Evidence offered by defendant included the following:

Defendant testified she "was driving around thirty-five"; that she did not see Gwendolyn until "she was right in front of (her) car"; that "it happened so quick" she could not say "whether or not the child was running, walking or standing still when (she) first saw her"; that she tried to turn to her left but it was too late to avoid striking the child; that, as a result of the collision, her right front parking light was broken; and that she did not remember seeing a truck coming towards her on Carolina Avenue.

The investigating officer, a witness for defendant, testified he found "a spot of blood" on the paved portion of Carolina Avenue approximately six feet south "of the walkway up to Buck Webb's house" and "approximately two feet from the (west) edge of the paved portion."

Walters, a witness for defendant, testified he was driving a truck north on Carolina Avenue; that he, when one hundred yards therefrom, saw the collision; that he saw the child before he saw defendant's car; that the child came out of the walkway to the Buck Webb residence, "between two hedges," running. He testified he "wondered if the child was going to stop when she got to the street"; that "(b)y this time (he) had seen the car coming"; that when he saw the child running defendant "was right on the child"; that defendant was "pretty close to where the child was when (he) first saw her"; and that the child did not stop on the shoulder but ran "into this lady's car," striking "the round part" on the right front fender.

We deem it unnecessary to review the evidence in greater detail.

It is noted that Gwendolyn, a six-year old child, was incapable of contributory negligence as a matter of law. *Walston v. Greene*, 247 N.C. 693, 102 S.E. 2d 124. Our sole inquiry is to determine whether, upon application of well established rules, the evidence was sufficient for submission to the jury as to whether the collision and Gwendolyn's death were proximately caused by negligence on the part of defendant.

The only motion for judgment of nonsuit to be considered is that made at the close of all the evidence. G.S. 1-183. In determining its sufficiency for submission to the jury, the evidence, whether offered by

plaintiffs or by defendant, must be considered in the light most favorable to plaintiffs. *Murray v. Wyatt,* 245 N.C. 123, 128, 95 S.E. 2d 541; *Eason v. Grimsley,* 255 N.C. 494, 496, 121 S.E. 2d 885. True, the court may consider evidence offered by defendant that "tends to clarify or explain evidence offered by plaintiff not inconsistent therewith, but it must ignore that which tends to establish another and different state of facts or which tends to contradict or impeach the testimony presented by plaintiff. (Citations) Otherwise, consideration would not be in the light most favorable to plaintiff. (Citations)" *Watters v. Parrish,* 252 N.C. 787, 795, 115 S.E. 2d 1.

Defendant contends the testimony of Jewel Parker "is not connected in point of time with the defendant's approach to the intersection" and therefore her testimony is not inconsistent or in conflict with that of Walters. Defendant suggests that Gwendolyn might have gone into the Buck Webb yard after Jewel Parker saw her. True, Jewel Parker testified she did not see the collision and that she was watching television when she heard the noise that attracted her attention. But she testified she heard the noise "a short time"—"not too long"—after she saw Gwendolyn.

When the evidence is considered in the light most favorable to plaintiffs, the inference is permissible that Gwendolyn, with a bottle in each hand, was on her way back to the Caulder residence from the store and upon reaching the place where Jewel Parker observed her stood on or near the west edge of the pavement awaiting an opportunity to cross the street to the Caulder residence. Moreover, the credibility of Walters' testimony was for jury determination. Defendant, according to her testimony, did not see Gwendolyn until the moment of impact although she was much closer to her than Walters. Indeed, defendant testified she did not remember seeing Walters' truck. Walters, according to his testimony, was a hundred yards away when the impact occurred. According to Walters, the child ran into the side (right front fender) of defendant's car. Defendant testified she saw the child right in front of her at the moment of impact and that her right front parking light was broken as a result of the collision.

Whether defendant, in driving 35 miles per hour, was negligent in respect of speed depends largely on whether in the exercise of due care she could and should have seen Gwendolyn in a perilous position at a time when she could by decreasing speed have avoided the collision. *Cassetta v. Compton, ante,* 71, 123 S.E. 2d 222.

Applying the applicable well settled rules, we are of opinion, and so decide, that the evidence was sufficient for submission to the jury on the issues raised by the pleadings. Hence, the judgment of involuntary nonsuit is reversed.

Reversed.