## J. E. COLEMAN v. COLONIAL STORES, INC.

### (Filed 10 April 1963.)

**1. Trial § 21—**

On motion to nonsuit, the evidence must be considered in the light most favorable to plaintiff, and evidence tending to contradict or impeach plaintiff's evidence must be disregarded, and all conflicts in the evidence resolved in plaintiff's favor.

**2. Negligence § 37b—**

The proprietor of a store is not under duty to warn the customer of a condition which is obvious to any ordinarily intelligent person.

**3. Negligence § 37f—**

Evidence tending to show that defendant, a self-service market, maintained a meshed metal screen, basically in the shape of a right triangle, at a right angle to the exit door when it was closed, that the metal screen could be plainly seen through the glass exit door by a person approaching the door, that plaintiff approached the door holding two sacks of groceries, which partially obstructed his vision, turned left in a hurry after passing through the exit door and fell over the metal screen, *held* insufficient to show negligence on the part of the proprietor and to show failure on the part of plaintiff to exercise ordinary care for his own safety.

APPEAL by plaintiff from *Clarkson, J.,* November Civil Term 1962 of CATAWBA.

Civil action to recover damages for personal injuries sustained in falling over a meshed metal screen constructed on the outside of the exit door of defendant's store.

Defendant in its answer denied negligence, and conditionally pleaded contributory negligence as a bar to recovery.

From a judgment of involuntary nonsuit entered at the close of plaintiff's and defendant's evidence, plaintiff appeals.

*Smith and Benfield by Young M. Smith for plaintiff appellant.*

*Patrick, Harper & Dixon by F. Gwyn Harper, Jr., for defendant appellee.*

PER CURIAM. Plaintiff's evidence shows:

Defendant operates a self-service supermarket in the town of Hickory, and has many customers. It provides parking space for its customers. A large part of the front of the store is of plate-glass construction with metal at the ceiling and at the floor, with some supporting columns in between, holding the glass in place. The "out" or exit door for customers is a single panel of glass with an aluminum frame. and is at the front of the store. Inside in front of the door is a

rubber mat, which, when a customer steps on it, automatically opens the door to the left. On the outside of this exit door to the right, as a person goes out, is a meshed metal screen at a right angle to the door when it is closed, which is securely fastened to the wall of the store and the pavement. This metal screen, dark gray in color, is basically in the shape of a right triangle. It is about four and a half or five feet high, about eight inches wide at the top, and about thirty-four inches wide at the bottom. The metal screen outside the exit door can be plainly seen through the glass of this door.

Between 2:00 and 3:00 p.m. on 8 November 1960 plaintiff, a life insurance salesman living in Hickory, who is six feet tall, parked his automobile at defendant's store and entered it to shop. In the store he purchased two steaks, some Idaho baking potatoes, a loaf of bread, a ten-pound sack of charcoal, and some lighter fluid. When he paid the cashier for these articles, they were placed in two large paper bags. He placed a hand under each bag, resulting in the bags being higher than his shoulders, and started to leave. When he stepped on the rubber mat at the exit door, it automatically opened. He walked through, said hello to someone outside, turned to his right, tripped over the bottom of the metal screen, and fell, fracturing the knee cap of his left leg. He first saw the screen after he fell over it. There was nothing there to call his attention to the metal screen. He had shopped in defendant's store before, and in leaving had turned to his left. In so doing he had not noticed the screen.

A witness for plaintiff, who had worked at this store, testified he had seen a person catch his toe around the screen, he had bumped into it when he was in a hurry, and he had "noticed that maybe a lady, you know, bumping the screen, maybe she would give kind of a squeal sound, something like that, maybe notice it."

Defendant offered evidence to the effect that plaintiff said at the scene and at the hospital that it was his fault, he was in a hurry, he spoke to someone, and did not look where he was going, and also to the effect that he had previously had trouble with one of his legs, and he felt like it gave away causing him to fall.

It is elementary knowledge in passing on a motion for judgment of involuntary nonsuit that the evidence must be considered in the light most favorable to plaintiff, and the court must ignore that which tends to contradict or impeach the evidence presented by plaintiff. All conflicts in the evidence must be resolved in plaintiff's favor. *Bundy v. Powell,* 229 N.C. 707, 51 S.E. 2d 307.

The metal screen at the exit door was obvious to any ordinarily intelligent person using his eyes in an ordinary manner. No unusual

conditions existed at the time. As plaintiff approached the exit door, the metal screen outside could be plainly seen through the glass door. At the time and place the metal screen did not constitute a hidden danger or an unsafe condition to plaintiff, an invitee using the premises. Defendant was not under a duty to warn its customers of a condition which was obvious to any ordinarily intelligent person. *Garner v. Greyhound Corp.*, 250 N.C. 151, 108 S.E. 2d 461, 81 A.L.R. 2d 741; *Little v. Oil Corp.*, 249 N.C. 773, 107 S.E. 2d 729; *Reese v. Piedmont, Inc.*, 240 N.C. 391, 82 S.E. 2d 365; *Benton v. Building Co.*, 223 N.C. 809, 28 S.E. 2d 491. There is no evidence that the metal screen was improperly constructed or maintained at the time plaintiff fell.

Viewing plaintiff's evidence according to the rule, it is insufficient to make out a case of actionable negligence against defendant. Plaintiff's evidence plainly shows he failed to exercise ordinary care for his own safety.

The judgment of involuntary nonsuit will be upheld. This is in accord with our decisions in *Garner v. Greyhound Corp., supra; Little v. Oil Corp., supra; Reese v. Piedmont, Inc., supra; Watkins v. Furnishing Co.*, 224 N.C. 674, 31 S.E. 2d 917; *Benton v. Building Co., supra.*

Affirmed.