MARGARET J. BENNETT, Administratrix of the Estate of COMMODORE WILLIS JONES v. JAMES H. YOUNG, J. C. ANDERSON and L. A. REYNOLDS COMPANY, Jointly and Severally.

(Filed 14 January, 1966.)

**1. Trial § 21—**

On motion to nonsuit, the evidence must be considered in the light most favorable to plaintiff, giving her the benefit of all reasonable inferences therefrom, resolving all conflicts in her favor, and disregarding defendant's evidence tending to show a different state of facts.

**2. Negligence § 24a—**

If there is sufficient evidence of actionable negligence for which a defendant is responsible, and the evidence, considered in the light most favorable to plaintiff, does not disclose contributory negligence of plaintiff as the sole reasonable inference, nonsuit should be denied.

**3. Negligence § 26—**

Evidence tending to show that a construction worker was driving grading stakes on the construction site under the supervision of his superior and that on the occasion in question was doing so with his back to a dump truck, and had reason to believe that his superior was standing watching him do so, *held* not to disclose contributory negligence as a

matter of law on his part so as to bar an action for his wrongful death resulting when the waiting dump truck was backed without warning and struck him.

**4. Automobiles § 12—**

A driver backing a motor vehicle must use that degree of care which a reasonably prudent man would use under similar circumstances to avoid injuring another, and while the degree of care varies with the exigencies of the occasion, the requirement that before backing he must exercise due care to ascertain whether he can do so with safety to others obtains even on private property when he has reason to believe that a pedestrian or another vehicle may be in his intended path.

**5. Automobiles § 41k—**

Evidence tending to show that a dump truck on a construction site was standing waiting to back into place to be loaded, that its rear view mirrors did not disclose any object within twenty feet of its rear, and that the driver without warning or sounding his horn backed the truck into a workman who had been driving a stake with his back to the truck and in the area not shown in the mirrors, *held* sufficient to be submitted to the jury on the question of the truck driver's negligence.

**6. Master and Servant § 20—**

Where the subcontractor of the grading contractor merely operates dump trucks to carry away excavated dirt, such work is not intrinsically dangerous and the grading contractor is not liable for an injury inflicted on another as a result of the negligence of an employee of the subcontractor.

**7. Same—**

Evidence tending to show that the trucks of the grading contractor were the only vehicles entering upon the construction site, that there were two loading machines which could load a truck within from four to ten minutes, and that the employees of other contractors were pedestrians on the site, *held* not to show a sufficient volume of vehicular or pedestrian traffic as to constitute the failure of the grading contractor to provide a director of traffic negligence.

APPEAL by plaintiff from *Pless, J.,* 16 April 1965 Session of GUILFORD.

The plaintiff appeals from a judgment of nonsuit as to all defendants in an action for wrongful death.

It is alleged in the complaint and admitted in the answer of each defendant that:

On August 30, 1960, the plaintiff's intestate was killed, almost instantly, when a truck owned by the defendant Young, and operated by his employee, Laws, who was acting in the course of his employment, backed into and ran over him upon the premises of the Pilot Life Insurance Company near Greensboro. The deceased and all of the defendants were then engaged in certain construction

work upon these premises. The defendant L. A. Reynolds Company (hereinafter called Reynolds) was the subcontractor for the work of clearing, excavating and grading the construction site. The defendant Anderson was the employee of Reynolds and, at the time in question, was acting in the course of his employment. Young's truck, driven by Laws, was engaged in hauling dirt in the course of such excavation and grading of the construction site. The plaintiff's intestate was an employee of the general contractor who is not a party to this action. At the time of his death, the plaintiff's intestate was engaged in driving into the ground a grade stake pursuant to instructions from his foreman, another employee of the general contractor. To do so he had gone to the point where the stake was to be driven, this being directly behind Young's truck, which was then standing about 20 feet away, waiting for its turn to move backward to a position where it would be loaded by an excavating and loading machine. In driving the stake the plaintiff's intestate turned his back to the then stationary truck of Young. While he was in this position and engaged in the driving of the stake, the truck started to move backward and ran over him.

The complaint further alleges:

Laws was negligent in the operation of Young's truck by driving it backward without warning, without keeping a proper lookout and without seeing that it could be so moved in safety to others; Anderson was negligent in that he failed properly to supervise and direct the movement of the earth moving equipment and the trucks and failed to warn the plaintiff's intestate that the truck was moving and of the danger to him resulting therefrom; and such negligent acts and omissions concurred and were the proximate cause of the death of the plaintiff's intestate. The answer of each defendant denies negligence by such defendant and pleads contributory negligence by the plaintiff's intestate in that he proceeded to work in this dangerous location without maintaining a proper lookout for the movement of the trucks, turning his back to the direction from which such truck might and did back upon him.

The plaintiff offered evidence tending to show, in addition to the foregoing admitted facts and to matters relating to the life expectancy and earning capacity of her intestate, the following:

At the time of the accident, there was considerable activity and noise in the construction area. A large number of men were at work on the site. Seven dump trucks, including four owned by Young, were engaged in hauling the dirt away from the area. In a consistent pattern the trucks, one after another, entered the excavation area, stopped with the engine running, awaited their turns, then backed up to one of the two mechanical loaders, were loaded with

dirt and drove away. It required about three buckets of earth from the loader to load a truck. At the point of the accident the ground had been recently excavated and was reasonably smooth.

Anderson was the superintendent on the job for Reynolds. He and Young were both present on the site at the time of the accident. Each was some distance away and neither actually saw it happen.

The Young truck, operated by Laws, was a ton and a half dump truck. It had a horn and was equipped with mirrors on each side. A truck fully equipped with mirrors has a blind spot immediately behind it.

J. T. McManis was the general contractor's superintendent on the job. The plaintiff's intestate, an employee of the general contractor, was working directly with McManis, and under his instructions, at the time of his death, laying out the project and driving grade stakes. McManis designated the points where the stakes were to be placed and the plaintiff's intestate drove them into the ground. Usually they walked along together from point to point.

On this particular occasion, McManis located the point where the stake was to be driven, which was about 20 feet back of the Young truck, operated by Laws, which McManis then observed standing still and waiting its turn to move into position to be loaded. While the plaintiff's intestate was driving the stake, McManis walked on toward the next point. When he turned around he was surprised to find plaintiff's intestate was not with him. He looked back and saw the plaintiff's intestate back of the truck, bent over at the location McManis had designated for the driving of the stake. This was about 20 feet immediately back of the Young truck, operated by Laws. The truck had started backing straight and slowly toward the plaintiff's intestate. McManis shouted a warning but was not heard by either the plaintiff's intestate or the truck driver. He then ran and overtook the slowly moving truck and banged on the door. Laws stopped the truck immediately but it had already struck and run upon the plaintiff's intestate. At that time Anderson came up. McManis does not recall hearing the horn of this truck blow on this occasion. On previous occasions he had heard the trucks sound their horns.

McManis did not direct the work of Reynolds. He simply told Reynolds where to grade and how deep to cut. He gave no instructions as to the manner in which Reynolds was to perform the grading work, these being given by Anderson. The plaintiff's intestate had been in this area with McManis on the morning of the day when he was killed, doing similar work and the trucks were following the same routine pattern. He had worked with McManis for a

number of years on different jobs and was an experienced laborer in such work. McManis did not give the plaintiff's intestate any safety instructions because he felt that the danger at the location was obvious to anyone with experience. He did not feel that the operation of the trucks getting into position, waiting for the loader and going in and out was being carried on in a dangerous manner.

The defendant Young offered evidence tending to show:

The truck involved in the accident had a rear view mirror on each side of it, but immediately behind the truck there is a space of about 15 to 20 feet in depth into which the driver could not see by looking in either mirror. There is also a rear window in the cab of the truck but the body of the truck obstructs vision to the rear through that window. Young hired his own drivers for his trucks, renting the trucks and the drivers to Reynolds at a fixed sum per hour. He instructed the drivers how to drive the trucks. Anderson, superintendent for Reynolds, instructed them where to take the dirt.

The defendants Anderson and Reynolds introduced evidence tending to show:

Anderson gave no instructions to Laws as to the operation of the truck. At the time this accident happened Anderson was 50 to 60 feet away engaged in the making of certain markings upon a portion of the old building adjacent to the new construction. He did not see the accident occur, but went immediately to the scene.

The purpose of the grade stakes being driven by the plaintiff's intestate was to show the amount of cut or fill at the particular point. Anderson had requested McManis and the plaintiff's intestate to give him such direction during the lunch hour and was told, "We'll have them in before you get back." During the lunch hour McManis and the plaintiff's intestate put in some of the stakes and were continuing this work when the accident occurred.

It would take about four minutes for the loader to dig the dirt, lift it and complete the loading of a truck. Every four to ten minutes a truck would move into the area where the loader was operating. Frequently trucks were waiting to be loaded.

At the close of all the evidence the court granted the motion of each defendant for judgment as of nonsuit.

*A. L. Meyland and H. H. Issacson for plaintiff appellant.*

*Of Counsel: Block, Meyland & Lloyd and Clarence C. Boyan for plaintiff appellant.*

*Booth, Osteen, Fish & Adams for defendant appellees J. C. Anderson and L. A. Reynolds Company.*

*Cooke & Cooke for defendant appellee James H. Young.*

LAKE, J. In reviewing the rulings of the trial judge upon the separate motions of the defendants for judgment as of nonsuit, we are required, as was he, to consider the plaintiff's evidence in the light most favorable to her, resolving all conflicts therein in her favor, drawing therefrom all reasonable inferences favorable to her and disregarding all evidence by the defendants tending to show a situation or a course of action contrary to that shown by the plaintiff's evidence so interpreted. *Moss v. Tate,* 264 N.C. 544, 142 S.E. 2d 161; *Coleman v. Colonial Stores, Inc.,* 259 N.C. 241, 130 S.E. 2d 338; *Ammons v. Britt,* 256 N.C. 248, 123 S.E. 2d 579. If, when so considered, it is sufficient to support a finding by the jury that one of the defendants, or a person for whose negligent act or omission such defendant is responsible, was negligent and that such negligence was a proximate cause of the death of the plaintiff's intestate, the motion of that defendant for judgment of nonsuit should have been denied, unless the evidence, so interpreted, shows contributory negligence by the plaintiff's intestate so clearly that no other inference may be reasonably drawn therefrom. *Short v. Chapman,* 261 N.C. 674, 136 S.E. 2d 40; *Pruett v. Inman,* 252 N.C. 520, 114 S.E. 2d 360; *Bondurant v. Mastin,* 252 N.C. 190, 113 S.E. 2d 292; Strong, N. C. Index, Negligence, § 26.

The plaintiff's evidence, if believed, as it must be upon this motion, tends to show that her intestate was directed by his employer's superintendent to drive a grade stake at the precise point where he was driving it when struck by the truck. He and the superintendent had been walking together from point to point, the superintendent directing him where to put the respective stakes and the plaintiff's intestate driving them pursuant to such instructions. As each stake was driven they had been walking together to the next location. On this occasion, the superintendent walked on toward the place where the next stake was to be driven before the plaintiff's intestate had finished the driving of the stake at the point behind the truck of the defendant Young. When the superintendent turned to look back he was surprised to find that the plaintiff's intestate was not walking with him. From this it may reasonably be inferred that the plaintiff's intestate was equally unaware of the fact that his superintendent was no longer standing nearby, observing the driving of the stake and the truck behind which he had instructed the plaintiff's intestate to go. Under these conditions we cannot say, as a matter of law, that the plaintiff's intestate was negligent in going behind the truck to drive the stake or in driving it with his back turned toward the truck, which was not moving when he stepped behind it. Whether his doing so under these circumstances was a failure by him to use reasonable care for his own safety, and one of

the proximate causes of his injury and death, is a question for the jury, if it reaches the issue of contributory negligence.

Laws, the driver of the truck, was originally made a party defendant to this action. However, he could not be found for the service of summons and the trial of the action proceeded as if he had not been made a party. He was not present at the trial, so the record does not contain any testimony by him as to what he did, or did not do, in the operation of the truck.

It being alleged in the complaint and admitted by Young in his answer that Laws was operating the truck in the course of his employment by Young, Young is responsible for the negligence of Laws, if any, in such operation.

The evidence of the plaintiff, interpreted as it must be upon Young's motion for judgment of nonsuit, tends to show that Laws backed the truck without blowing the horn or giving any other signal of his intent to do so and that the rear view mirrors on each side of the truck would not disclose to Laws what, if anything, was in the area immediately behind the truck, this being the area in which the plaintiff's intestate was driving the stake. Although there is nothing to indicate that Laws actually knew anyone was, or had been, behind the truck, there is evidence that a number of workers were on the construction site and it might be inferred that the presence of one of them at any part of the site could be anticipated from time to time.

In *Adams v. Service Co.*, 237 N.C. 136, 142, 74 S.E. 2d 332, after observing that it is not negligence *per se* to back an automobile on the highway, Winborne, J., later C.J., said for the Court:

> "And while the law does not forbid the backing of an automobile upon the streets and highways, and to do so does not constitute negligence, the driver of an automobile must exercise ordinary care in backing his machine so as not to injure others by the operation, and this duty requires that he adopt sufficient means to ascertain whether others are in the vicinity who may be injured."

In *Wall v. Bain*, 222 N.C. 375, 379, 23 S.E. 2d 330, Seawell, J. observed that backing a motor vehicle upon the highway is "an operation which involved a greater danger than ordinary travel," and that no reasonable person would drive in that manner for any length of time. He then said, for the Court:

> "The requirements of prudent operation are not necessarily satisfied when the defendant 'looks' either preceding or during the operation of his car. It is the duty of the driver of a motor

vehicle not merely to *look,* but to *keep an outlook* in the direction of travel; and he is held to the duty of seeing what he ought to have seen."

This rule has been quoted with approval many times by this Court. *Greene v. Meredith,* 264 N.C. 178, 141 S.E. 2d 287; *Sugg v. Baker,* 261 N.C. 579, 135 S.E. 2d 565; *Kellogg v. Thomas,* 244 N.C. 722, 94 S.E. 2d 903.

While the foregoing decisions dealt with the operation of motor vehicles upon the public highways, the same principles apply to the operation of such a vehicle elsewhere, such as upon private property whereon a construction project is under way. In *Murray v. Wyatt,* 245 N.C. 123, 95 S.E. 2d 541, the facts were very similar to those in the record now before us. There, an employee of the general contractor was killed when the subcontractor's dump truck backed into him in process of dumping a load of materials at a site maintained for that purpose by the contractor. Motion for judgment of nonsuit was held to have been properly denied, the Court citing *Adams v. Service Co., supra,* and saying:

> "In view of the evidence that both Murray and the [Jones] truck were in fact directly behind him, it was for the jury, upon all the evidence, to say whether Boyle failed to use due care in backing his truck without first exercising due care to ascertain whether he could do so without striking Murray or the Jones truck. * * * There is little difference between backing a truck when you cannot see what is behind you and in driving forward when blindfolded."

Whether the vehicle is being operated on a public highway or elsewhere, the driver must use the care which a reasonable man would use in like circumstances to avoid injury to another. As Parker, J., said in *Greene v. Meredith, supra,* "The rule is constant while the degree of care which a reasonably prudent man exercises or should exercise varies with the exigencies of the occasion."

Of course, one driving a motor vehicle in an open field, with no reason to suppose any other person is nearby, is not to be held to the same degree of vigilance in maintaining a lookout, whether proceeding forward or backward, as is one driving upon a heavily traveled highway. But where the motorist has reason to believe that any pedestrians or other vehicles may be in his intended path, he must exercise for their safety the care which a reasonable man would use under the same circumstances, even though he be driving upon private property.

Applying these standards of care and viewing the plaintiff's evidence as we are required to do upon this motion, we are unable to

hold, as a matter of law, that Laws used the care of a reasonable man. So considered, her evidence would support a finding that, having notice that some person might be standing or walking in his intended path, Laws put his vehicle in motion and backed it into an area he could not observe, without blowing his horn or giving any other signal. It is, of course, for the jury to determine, in the light of all the evidence, whether Laws actually did use the care which a reasonable man would use under the circumstances then, in fact, prevailing. It is for the jury to determine both what those conditions were and how Laws operated the truck. Its determination must be made in the light of all the evidence, free from the limitations which govern our consideration of it upon a motion for judgment of nonsuit, and in view of the rule that the burden is upon the plaintiff to prove negligence by Laws. The evidence of the plaintiff, if believed is, without more, sufficient to support a finding that Laws failed to use such care and his failure was a proximate cause of the death of the plaintiff's intestate. Therefore, the court erred in granting the motion for judgment of nonsuit in favor of Young, the employer of Laws.

As to the defendant Anderson and the defendant Reynolds a different situation exists. Anderson was the employee of Reynolds, so any negligence by him in the course of his employment would be imputed to Reynolds. However, there was no duty upon Anderson to station a watchman to direct the movement of the trucks unless such duty rested upon Reynolds and fell upon Anderson by virtue of his being Reynolds' superintendent.

Reynolds was the subcontractor performing the grading of the construction site. Laws, the driver of the truck, was not the employee of either Reynolds or Anderson. Laws was employed by Young, an independent contractor hauling the dirt for Reynolds. The work which Young and his employees were doing was not inherently dangerous. It consisted simply of driving a truck into a position where Reynolds could load it with dirt and then driving the truck away to a place designated by Reynolds and dumping the dirt there. It required no precaution other than those incident to any operation of a dump truck. Consequently, Reynolds, for whom this work was being done under the subcontract, would not be liable for the negligence of Laws in the operation of the truck. See: *Dockery v. Shows*, 264 N.C. 406, 142 S.E. 2d 29; *Evans v. Rockingham Homes, Inc.*, 220 N.C. 253, 17 S.E. 2d 125; *Greer v. Construction Co.*, 190 N.C. 632, 130 S.E. 739. Anderson would not be liable for the negligence of Laws, there being no relation of any sort between them.

The plaintiff complains of these defendants on the theory that it was their duty to station a person at or near the excavating and loading machines to direct the movement of the trucks up to and away from this point. Her evidence fails to show that there was a sufficient volume of traffic, vehicular or pedestrian, to make such a director of traffic reasonably necessary. It shows that the trucks followed a regular routine which was apparent to anyone working about the project. A total of approximately seven trucks were engaged in the activity. There were two loading machines. From four to ten minutes were required to load a truck. Thus, assuming the two loading machines worked uniformly, a truck would arrive at the machine and depart approximately each three or four minutes. No other vehicles moved in the area. The public did not enter upon it. Under these circumstances, the plaintiff's evidence fails to show a duty upon Reynolds, the grading contractor, to provide a traffic director. Anderson's duty, in that respect, would be no greater than that of his employer.

The plaintiff's evidence, viewed most favorably to her, shows no breach of any duty owed to her intestate by Anderson or Reynolds. Therefore, the motions of these defendants for judgment of nonsuit were properly allowed.

Affirmed as to the defendants Anderson and L. A. Reynolds Company.

Reversed as to the defendant Young.