ARTHUR WARREN McCRILLIS, PLAINTIFF, v. A & W ENTERPRISES, INC., A CORPORATION, AND ROOT BEER DRIVE-INS, INC., A CORPORATION, DEFENDANTS.

(Filed 20 June, 1967.)

1. Trial § 21—

On motion to nonsuit, the evidence must be considered in the light most favorable to plaintiff, resolving all conflicts and inconsistencies in his favor and giving him the benefit of all reasonable inferences therefrom.

2. Same—

On motion to nonsuit, defendant's evidence which tends to establish an affirmative defense or which is contradictory to that offered by plaintiff must be disregarded.

**3. Master and Servant § 10—**

Plaintiff's evidence tending to show a contract of employment for a specified term at a specified salary, binding on one of defendant corporations by ratification and on the other by its adoption of the agreement, and that plaintiff was wrongfully discharged prior to the end of the term, *is held* sufficient to overrule nonsuit in plaintiff's action for damages for breach of the contract of employment, defendants' evidence in contradiction not being considered on motion to nonsuit.

**4. Corporations § 10—**

Evidence tending to show that individuals formed a holding corporation which purchased all of the capital stock of an operating corporation shortly after such individuals had made a contract of employment on behalf of the operating corporation, and that after such acquisition of stock by the holding corporation the new board of directors of the operating corporation, with full knowledge of the contract of employment, accepted services rendered under the contract and by resolution of its new board of directors fixed the salary of the employee, is sufficient to support a finding that the operating corporation ratified the agreement so as to be bound thereby.

**5. Trial § 26; Pleadings § 28—**

A material variance between allegation and proof warrants nonsuit for failure of plaintiff to prove the cause alleged, but whether a variance is material must be determined upon the facts of each particular case, and a variance which could not have misled defendant to his prejudice will not be deemed material. G.S. 1-168, G.S. 1-169.

**6. Same—**

Allegation that a contract of employment was for a period of six years, with evidence that the contract was for a period of five years modified by mutual consent so as to begin one year after the beginning of the employment, is not a material variance.

**7. Corporations § 10—**

While a corporation may not ratify an agreement made in its name prior to its incorporation, if, after incorporation, it accepts the benefits of the agreement through action of its board of directors with full knowledge of the terms of the agreement, the corporation may be held to have adopted such contract so as to be bound thereby.

**8. Principal and Agent § 6—**

The fact that a person dealing with an agent knows at the time that the agent does not have authority to bind the principal in the matter does not preclude ratification of the agreement by the principal.

APPEAL by plaintiff from *McConnell, J.,* at the 21 November 1966 Session of GUILFORD.

The plaintiff sues for damages for breach of contract of employment. At the close of all of the evidence, the motion by the defendants for judgment of nonsuit was allowed.

The complaint alleges that, on or about 1 April 1964, the plain-

tiff was employed by the defendants as general manager in North Carolina for a minimum period of six years at a fixed salary of $14,198 per year, plus certain expenses, plus an incentive bonus, plus the right to acquire up to 10% of the outstanding stock of the defendant corporations. It is alleged that the plaintiff faithfully performed his duties under such contract, that the defendants broke the contract by terminating the plaintiff's employment and that the plaintiff was damaged thereby.

The plaintiff, himself, testified to the following effect:

In and prior to March 1964, he was employed by A & W Development Corporation (then owner of all the outstanding shares of stock of Root Beer Drive-Ins, Inc.) as general manager of Root Beer Drive-Ins, Inc. In February 1964, Herbert Lord, who shortly thereafter became Chairman of the Board of each of the defendant corporations, and David Chapoton, who likewise became President of each of them, came to North Carolina and inspected the drive-in establishments and the records pertaining thereto, being accompanied on such inspection tour by the plaintiff. At that time, they discussed with the plaintiff the possibility of his continuing to manage these business establishments as employee of the two defendant corporations. They returned to North Carolina in March 1964 and renewed their negotiations with the plaintiff. Lord then explained to the plaintiff that A & W Enterprises, Inc., was going to purchase Root Beer Drive-Ins, Inc., and own it as a holding corporation. The plaintiff accepted the proposal made to him by them that he be employed by the defendant corporations as general manager of the operations of these drive-in establishments, effective 1 April 1964.

Lord promised the plaintiff an option to buy 2% of the stock of Root Beer Drive-Ins, Inc., each year over a period of five years, a salary of $1,183.00 per month for the five year period, plus certain expenses, plus a bonus which would be not less than $4,000 each year and which could rise to a maximum of $6,000, the variation depending upon increases in the gross volume of business. The plaintiff was to render service as general manager of Root Beer Drive-Ins, Inc., receiving his directions from Chapoton and Lord as president and chairman, respectively, of the corporation. The option price of the stock so to be purchased by the plaintiff was fixed at $1,500 per year.

The proposed acquisition of the shares of stock of Root Beer Drive-Ins, Inc., was consummated, and the plaintiff went to work under the new management on 1 April 1964. Lord told the plaintiff that he would have his personal attorney put the stock option agreement in writing but no such written agreement was ever delivered to the plaintiff in spite of frequent inquiries by him.

The plaintiff discharged the duties of his employment until September 1965, when Chapoton arrived in North Carolina on Saturday, borrowed $100.00 from the plaintiff on Sunday, and fired him on Monday, advising him that his services were no longer required by the defendant corporations and he was being dismissed as of 1 October. The plaintiff did not resign his employment. He was paid his salary to 1 October 1965, plus one month severance pay and two weeks accumulated vacation pay. He was also given a letter of recommendation, stating in somewhat vague and general terms that the plaintiff had performed his duties skillfully and that the termination of his employment was due to a consolidation of positions to reduce costs.

In late November 1964, following inquiries by the plaintiff concerning his failure to receive the written stock option agreement, Chapoton came to North Carolina and requested the plaintiff to defer the start of the stock option arrangement and the bonus arrangement until the beginning of a new fiscal year on 1 April 1965, so that the arrangement would run for five years from that date, which would have been six years from the date the plaintiff's employment began. The plaintiff consented to the change.

The plaintiff was never permitted to acquire the stock and was never paid the agreed bonus of $4,000 per year. Though he endeavored to obtain other suitable employment he had not been able to do so at the time of trial.

While employed by the defendant the plaintiff was made a vice president and director of Root Beer Drive-Ins, Inc. The first meeting of the new Board, consisting of Lord, Chapoton, the plaintiff, and two others, both of whom knew of the agreement between the plaintiff, Lord and Chapoton, was held on 1 April 1964. The minutes of that meeting state:

"The next item of business to come before the meeting was the question of salary in compensation for Mr. Warren McCrillis, who was elected vice-president and general manager of the corporation. After some discussion among members of the Board of Directors, it was unanimously agreed that said Warren McCrillis shall be compensated at the rate of $1,183.00 per month, payable on the first day of the month following his completion of service for the previous month."

The plaintiff recalls no discussion in any meeting of the Board of his "complete salary package with Root Beer Drive-Ins, Inc."

Herbert Lord, called by the plaintiff as an adverse witness, testified to the following effect:

He was Chairman of the Board of each of the defendant corporations. A & W Enterprises, Inc., and Lord purchased Root Beer Drive-Ins, Inc. (*i. e.,* its outstanding stock) on or about 1 April 1964.

The plaintiff was not dismissed from the company "as such." At the meeting of the Board of Directors of Root Beer Drive-Ins, Inc., on 24 August 1965, the plaintiff tendered his resignation, which was accepted. The plaintiff accepted the terms of separation. The minutes of that meeting accurately reflect what occurred. They state:

> "The next item of business to come before the meeting was a statement by Mr. Warren McCrillis, vice president of the corporation, that he was going to resign as *vice president and director* of the corporation * * * His resignation was accepted with the understanding that the details of the same would be discussed and concluded at further meetings of the Board." (Emphasis added.)

At a meeting of the Board on 8 October 1965, not attended by the plaintiff, the resignation of Mr. McCrillis, "as vice president and a director of the corporation," was accepted as of 1 October 1965, and it was voted that he be paid one month severance pay plus two weeks vacation pay.

There were no plans to discharge the plaintiff. He resigned because the Board had planned to ask him to assume additional duties in view of financial difficulties experienced by the business.

A & W Enterprises, Inc., had not been incorporated at the time of the negotiations between Lord and the plaintiff in March 1964. The purpose of Lord's trip to North Carolina at that time was to examine the operating units of Root Beer Drive-Ins, Inc., with the purpose of purchasing them. These plans were discussed with the plaintiff.

There was no proposal of an employment contract with a definite term of years. There was no agreement for a guaranteed bonus arrangement. There was no contract to give the plaintiff a stock purchase option. This was discussed but no agreement was reached.

The purchase contract between A & W Development Company, the former owner of the stock, and Lord and Chapoton provided that no "additional shares" of stock of Root Beer Drive-Ins, Inc., could be issued, and no shares of treasury stock of the company could be sold, without the express written consent of a director to be designated by the seller of the stock so long as certain obligations to the seller remained unpaid. This agreement also provided that Lord and Chapoton would form a corporation to hold the shares

purchased by them. It was signed on behalf of Root Beer Drive-Ins, Inc., by the plaintiff as vice president.

The defendants' evidence consisted of the minutes of the above mentioned meetings of the Board of Directors of Root Beer Drive-Ins, Inc., and testimony by various officers and employees of the defendant corporations to the effect that the plaintiff was dissatisfied with his employment and resigned.

*Cahoon & Swisher for plaintiff appellant.*

*Smith, Moore, Smith, Schell & Hunter by James G. Exum, Jr., for defendant appellees.*

LAKE, J. In considering a motion for judgment of nonsuit, we must interpret the evidence in the light most favorable to the plaintiff, resolve contradictions or inconsistencies in his testimony in his favor, give him the benefit of all reasonable inferences therefrom which are favorable to him, and disregard the evidence of the defendant which is contradictory to that offered by the plaintiff or which tends to establish an affirmative defense. *Aaser v. Charlotte,* 265 N.C. 494, 144 S.E. 2d 610; *Griffin v. Indemnity Co.,* 265 N.C. 443, 144 S.E. 2d 201; *Moss v. Tate,* 264 N.C. 544, 142 S.E. 2d 161; *Coleman v. Colonial Stores, Inc.,* 259 N.C. 241, 130 S.E. 2d 338; *Wall v. Bain,* 222 N.C. 375, 23 S.E. 2d 330. The credibility of the evidence is for the jury.

When so considered, the evidence offered by the plaintiff is sufficient to support, though not to require, a finding that Lord and Chapoton agreed with the plaintiff, on behalf of the two defendants, that if he would work as general manager of the operations of Root Beer Drive-Ins, Inc., after the contemplated acquisition by them of all of its outstanding shares and the contemplated formation of A & W Enterprises, Inc., the two corporate defendants would retain him in such employment for a period of five years at the specified salary, with the specified bonus opportunities and the specified stock option. The evidence is also sufficient to support, though not to require, a finding that after the acquisition of such stock the new Board of Directors of Root Beer Drive-Ins, Inc., with full knowledge of the agreement so negotiated, ratified it, both by the express resolution of the Board and by the acceptance of the plaintiff's services. The evidence is also sufficient to support, but not to require, a finding that the plaintiff performed the services required of him under the contract and was wrongfully discharged to his damage.

We do not deem the variance between the allegation in the complaint that the contract was for a period of six years and the evi-

dence of a contract for employment for five years, later modified by mutual consent so as to begin one year after the new management assumed control, to be a material variance. Where there is a variance between allegation and proof, amounting to the allegation of one cause of action and proof of another, a nonsuit is proper. In such case there has been a failure by the plaintiff to prove the cause of action alleged in his complaint. G.S. 1-169; *Hall v. Poteat,* 257 N.C. 458, 125 S.E. 2d 924; *Talley v. Granite Quarries Co.,* 174 N.C. 445, 93 S.E. 995; *Wright v. Insurance Co.,* 138 N.C. 488, 51 S.E. 55. However, where the variation between allegation and proof is such that the adverse party could not have been misled thereby to his prejudice, it will not be deemed a material variance. G.S. 1-168; *Dennis v. Albemarle,* 242 N.C. 263, 87 S.E. 2d 561, rehear. dism., 243 N.C. 221, 90 S.E. 2d 532. Whether the variance is material so as to justify nonsuit must be resolved in the light of the facts of each case. *Hall v. Poteat, supra.*

Obviously, at the time the plaintiff's negotiations with Lord and Chapoton culminated in the contract upon which he sues, neither Lord nor Chapoton was the agent of either of the defendant corporations. A & W Enterprises, Inc., had not been formed and neither of them had then acquired stock in or become an officer of, or otherwise connected with, Root Beer Drive-Ins, Inc. It appears from the plaintiff's evidence that he was then aware of this circumstance. However, the reasonable inference to be drawn from the plaintiff's evidence is that the agreement was for employment of the plaintiff by the two corporations, not by Lord and Chapoton, and purported to be entered into on behalf of the corporations. One, upon whose behalf a contract is made without his authority, may ratify such contract even though the promisee, at the time of the making of the contract, knew the person with whom he was dealing had no authority to bind the promisor. Restatement of Agency, 2d ed., §§ 85, comment e, and 92, comment f; 3 Am. Jur. 2d, Agency, § 171.

The resolution of the Board of Directors of Root Beer Drive-Ins, Inc., at the meeting on 1 April 1964 did not specify the period for which the plaintiff's employment was to continue and did not refer to the bonus arrangement or the stock option. Nevertheless, the plaintiff's evidence is to the effect that each director present at the meeting knew the details of the agreement which he had reached with Lord and Chapoton. Under these circumstances, the adoption of such resolution and the acceptance of the plaintiff's services by Root Beer Drive-Ins, Inc., would constitute a ratification by it of the entire contract so made on its behalf by Lord and Chapoton. They, in the meantime, had become its officers and directors.

A contract made on behalf of a corporation to be formed cannot be ratified by the corporation since it was not in existence, and therefore could not have authorized the contract, when it was entered into. *McArthur v. Times Printing Co.*, 48 Minn. 319, 51 N.W. 216; 18 Am. Jur. 2d, Corporations, § 120. It may, however, be adopted by the corporation after it comes into existence. Such adoption may result from its acceptance of benefits of the contract with knowledge of its provisions. *Morgan v. Bon Bon Co., Inc.*, 222 N.Y. 22, 118 N.E. 205, *Huron Printing & Bindery Co. v. Kittleson*, 4 S.D. 520, 57 N.W. 233; *Jones v. Smith* (Tex. Civ. App.), 87 S.W. 210; 18 Am. Jur. 2d, Corporations, § 119; Annot., 17 A.L.R. 452, 477, 500.

The plaintiff's evidence, if true, is sufficient to show that A & W Enterprises, Inc., came into existence at or shortly before the time the plaintiff was to commence his services and did commence them. From its inception, it was the holding company which owned all the stock of Root Beer Drive-Ins, Inc. Lord was the chairman of its board of directors and Chapoton its president. Through the services of the plaintiff to its wholly owned subsidiary, it received the benefit it was intended to receive under the contract. Having so received the benefit of the contract, with full knowledge of its terms, it must be deemed to have adopted the contract and cannot escape its burdens.

Consequently, it was error to grant the motion for nonsuit as to either of the defendants. The credibility of the plaintiff's evidence as to the terms of the contract and the determination of whether he was wrongfully discharged or voluntarily resigned are matters to be determined by the jury in the light of the evidence to be presented at the new trial of the matter.

Reversed.